BARBOUR *v.* STEPHENSON.

(*Circuit Court, D. Kentucky.* 1887.)

1. SEDUCTION—SUIT BY FATHER—MINOR DAUGHTER—PRESUMPTION.
   In an action by a father for the seduction of his daughter, the relation of master and servant, which is still necessary to ground the action, is presumed, if she is under age and under his control.

2. SAME—CONSENT OF DAUGHTER.
   In such a case the consent of the daughter is no defense to an action by the father for her seduction.

3. SAME—MEASURE OF DAMAGES.
   The damages a father may recover, in an action for his daughter's, seduction, are not confined to the mere loss of services, and expenses attending her confinement, but may include compensation for all that he has felt and suffered in connection with the wrong.

Verdict for Plaintiff, $15,000.
*De Jarnette & Dickerson,* for plaintiff.
*O'Hara & Bryan* and *W. W. Cleary,* for defendant.

JACKSON, J., (*charging jury.*) The distinguished counsel having discharged their duty to their respective clients in this case, it now devolves upon the court and jury to perform their duties in the premises. The case, from its very nature and character, touches our sensibilities, and appeals to our sympathies, in the very strongest manner, but we

must not allow sympathies or prejudices in favor of or against either side to stand in the way of first ascertaining and determining the material facts on which the rights of these parties depend. You must not allow your sympathy or prejudice to run away with you, or to disregard the evidence. Your sworn duty is to decide this case on the evidence, under the law applicable to the questions involved as the court shall charge you, and with such comment as to the facts as the court may legitimately make.

Now, gentlemen, on entering upon your investigation of this case, when you retire to consider your verdict, you should first carefully review and weigh the whole evidence as to the material facts upon which the rights of these parties depend, without bias, prejudice, or sympathy. It devolves upon the plaintiff to establish to your satisfaction two facts, in order that he may recover: *First*, that the person seduced was his servant; and, *secondly*, that that seduction was accomplished as a matter of fact by the defendant. You will have no difficulty with the first branch of the case, it having been shown that the daughter in this case was in the family of the father, was under his control, and was under age, or a minor. The law presumes the relation of servant; that is, that the plaintiff had a right to her services, and that for the wrongful act of seducing her, whereby loss of her service resulted, he may recover. The old idea or theory was that the parent recovered only for the loss of service, together with such actual expense as he may have been subjected to in and about the daughter's confinement. But it may be said, to the credit of modern jurisprudence, that the law has advanced far beyond this relic of barbarism, and that now the damage resulting from such an injury is not confined to loss of service and attendant expenses, but reaches far beyond, and aims to give compensation to the wounded feelings of the plaintiff. According to the modern rule, the plaintiff goes through the *form* of showing that he was entitled to the daughter's service, in order to reach the higher plane of injury and wrong, for which he is entitled to compensation. This first element of the case to be established by plaintiff, viz., that the seduced person was his servant, is not contested by the defense, is fully shown by the undisputed evidence introduced, and you may therefore consider that branch of the case out of the way.

The controverted issue in the case turns upon the question whether, as a matter of fact, the defendant was the person who seduced or debauched the plaintiff's daughter, and was the father of the child of which she was delivered. That is the all-important fact to be determined by you. You must not concern or bother yourselves as to how the defendant may have accomplished the act, (if he did it,) or the precise hour of the day, or the exact place at which he did it. The question is, does the proof show to your satisfaction that the defendant was the father of the child the plaintiff's daughter gave birth to? That is the controverted issue and question of fact. Now, when you retire to consider and determine that material and vital fact, which you must determine for yourselves, (as the court can only aid you by some general rules relating

to evidence,) you must understand and bear in mind this leading proposition: that the plaintiff holds the affirmative of the issue, or what is called the burden of proof rests upon him, the defendant having denied the charge. The plaintiff must satisfy you, by what is called a preponderance of proof, that the wrong complained of was committed by the defendant. By the preponderance of proof the court does not mean the largest number of witnesses on a given point. Four or five witnesses may testify to a fact, and a single witness may testify to the contrary, but under such circumstances, or in such a manner, and with such an air and appearance of truth and candor, as to make it the most satisfactory or convincing to you that the *one* witness, with the opportunity of knowing the facts testified to, has told the truth of the matter. When you are thus satisfied that the truth lies with a single witness, or any other number, you are justified in returning a verdict in accordance therewith. This is what is meant by a preponderance of proof. It is that character or measure of evidence which carries conviction to your minds. You must be satisfied, gentlemen of the jury, from the whole evidence, that the defendant had carnal knowledge of the plaintiff's daughter, and, as a result of that connection, a child was born to her.

You are met in the very outset of your investigation with those unfortunate conflicts in the evidence which generally arise in cases of this character. As sensible men, you, as well as these lawyers, know that the fact of illicit intercourse or connection can rarely be established by direct or positive evidence of eye-witnesses to the overt act. Positive testimony, aside from the parties to the act, is not to be expected. The seduced person is a competent witness, and the plaintiff had the right to call his daughter as a witness. It would have been the subject of grave comment for him not to have called her, and given you an opportunity of hearing her statement of the matter. The defendant, in his own way and manner, has positively denied her statement. You cannot reconcile the testimony of these two witnesses, but must determine for yourselves, in connection with all the evidence, which you will believe. There are other conflicts in the evidence, bearing upon the main fact, which you should endeavor to reconcile and harmonize if you can. The court can only give you a few general rules as guides for weighing and deciding between testimony that cannot be reconciled.

When there is irreconcilable conflict in their statements, you can look to the intelligence of the witnesses; to their interests in the suit, or its result; to their relationship to the parties. A witness may be strongly biased by his or her relation to the litigants; and you should consider how far, if at all, such relationship has biased, controlled, or influenced such witness or witnesses in his or their testimony. You can also take into consideration the fact that the witness may be friendly to one side and hostile to the other. You can also look to the manner and bearing of the witness in testifying. Does the witness show a zeal in stating facts favorable to one side, and a reluctance in disclosing facts which would benefit the other? Does he testify in that frank, candid, and straightforward way which a witness should do under the solemnity of

an oath, or does he evade and equivocate? A witness may state facts reluctantly, and yet satisfy you that he or she is telling the truth. In the present case the young girl alleged to have been seduced might hesitate or be reluctant to detail all the particulars connected with or relating to the sexual intercourse. She is not to be immodest in order to be worthy of belief. You may look to the circumstances surrounding the witness, and the way he or she testifies in weighing their evidence. You may also look to their means of information, and their opportunity of knowing the facts whereof they testify. You should look to the consistency of their testimony. Is the statement of the witness consistent with itself? Is he consistent with himself, or does he contradict himself? Is he consistent with undisputed or well-established facts, about which you have no doubt? Is he corroborated or contradicted by other witnesses who, you are satisfied, have told the truth?

Now, gentlemen, take these general rules as guides with your own every day experience and apply them to the testimony given before you, and determine on which side of this case the truth lies. You are not permitted as a juror to go out of the jury-box and tell your associates what you may or might know about the matter in controversy, if anything, not having been placed upon the witness stand and subjected to cross-examination, which is the safest method known to the law of ascertaining the truth. But, while that is so, you may apply your experience in weighing and considering the statements made by witnesses, and in determining which side of conflicting and contradictory evidence best harmonizes with such experience and the probability of truth; and having thus satisfied yourself, your duty will be to decide accordingly. Do not lose sight of the real issue, which is, was the defendant the father of the child which the plaintiff's daughter gave birth to on the tenth day of July, 1885? As I have already stated, the plaintiff had the right to put his daughter on the witness stand to state the transaction as she alleges it occurred. She has done this, and you have not only heard her evidence, but have seen her manner of testifying, and it is for you now to test and determine the truth of her statement. The defendant has also been put upon the stand and positively contradicts every material statement made by her. You have seen his manner and bearing. Both testified under the solemnity of an oath, and one or the other has sworn falsely. It is for you to determine which has told the truth. In the issue that is presented here, the general character of the plaintiff's daughter for chastity is involved. The defense had the right to attack her general character for chastity, and to have broken down in that way any probability that defendant was the father of her child, even if he had had intercourse with her; but they have not done so,—that is, no attack has been made upon her general character for chastity; and the court instructs that you should allow no suspicion to cross your mind that she had previous intercourse with any other man who was the father of her child. It may be that I am stating that too strong, and I withdraw that statement or instruction. What I mean is that, not having attacked her general character for chastity, you cannot infer that she was

an improper or an unchaste woman .or girl previous to the time she was begotten with child. You cannot infer that the child of which she was delivered was the child of the man Shehan who has been referred to during the progress of the trial. So let that go. You have no evidence in the case to lead you off on such a trail as that.

For the plaintiff, it is insisted that the daughter's testimony is corroborated in all essential particulars by the evidence of her mother, and by the testimony of her sister. The contention for the defendant is that his denial of the seduction is corroborated by the fact (as claimed) that there were people in and about his office on the twelfth of October, 1884, at or about the time when it is claimed that the act of seduction occurred; that there were people in his office, and his office-room was so exposed to and surrounded by visitors that it was improbable that the transaction took place as stated. There are some facts and circumstances about which there is no controversy. The girl did have a child on the tenth day of July, 1885. In the ordinary period of gestation, that child was begotten on or about the tenth or twelfth or middle of October, 1884. The child was begotten about the *time* stated by the plaintiff's daughter. It does not appear that the child was born prematurely; nor is it shown to have been different from the ordinary period of birth. It is a fact that the girl was on the premises the day of the alleged seduction. It is a fact, unquestioned, that the defendant was on the premises that day, and in the house where it is claimed the seduction took place. The mother and sister state that the plaintiff's daughter was called by the defendant to that house on that day. The daughter also states that she was called by the defendant, and went there by direction of her mother. The defendant denies their statement. No other witnesses on either side testify to that fact. Which do you believe? It is for you to determine. Defendant not only denies calling the girl to his office, but also denies that he had anything to do with her,—that he had any sexual intercourse with her then and there, or at any other time or place; and in corroboration of his statement seeks to show that Gideon Hughes, John Wynn, and John Gay, and perhaps others, were there on that day, and that it was improbable, if not impossible, that he could have accomplished the seduction under such surrounding circumstances. Three credible witnesses, Mr. Lancaster, Dr. Dougherty, and Mr. Harris, are brought in, and swear before you that Gideon' Hughes' reputation in the neighborhood for truth and veracity is bad, that he is unworthy of belief, and that they would not believe him on oath. On that testimony, if you believe it, you have the right to discredit all that Gideon Hughes has stated, except in so far as he is corroborated by the testimony of other witnesses whom you do believe. All the witnesses stand before you as equally credible, except so far as they may have discredited themselves by false statements, or been discredited by other witnesses, or impeached.

The plaintiff's daughter says that she was called over to the defendant's office some time before dinner, or after her mother had commenced getting dinner, or while she was making preparations to get dinner. The

mother and sister make substantially the same statement. Gideon Hughes in his testimony, if you remember, says that he was at the defendant's office, on the day in question, from about 11 o'clock until 2 o'clock P. M. The witness Wynn says that he was there between 10 o'clock A. M. and 1 o'clock P. M. The colored man Gay says that he was at the boarding-house, about 80 feet distant from defendant's office, but does not remember to have been at the defendant's office. You must weigh this testimony and give it such consideration as you may think proper; but, gentlemen of the jury, you should not be misled by the question as to the exact hour at which the seduction was accomplished, if the act was committed by defendant. Of course, the daughter and her mother and sister have testified as to the time of day she went to defendant's office. You are not to find that the act was committed at any particular hour; but, assuming the evidence introduced by defendant to corroborate his denial to be true, the question is, was there, or was there not, an opportunity for defendant to have done the act complained of? Could he have done it before Gideon Hughes got there, assuming that Gideon Hughes got there about 11 o'clock A. M.? Can you find from the evidence that the act could or might have been accomplished before 11 o'clock, or can you find that Hughes got there at that hour? Apply your experience to these statements as to the exact hour a witness says he was at a particular place. How far can you rely upon the remembrance of a witness testifying to the exact hour at which he or she was in a particular office or place two or three years since? The thing for you to do, therefore, is to reconcile this conflict of evidence as to the precise hour of the act, under the testimony and the circumstances surrounding the parties. Could the seduction have occurred before Hughes got there? Could it have happened before Wynn got there? Could it have taken place while Gay was at the boarding-house? Does this evidence introduced by defendant to support and corroborate his denial, together with the surrounding circumstances, strengthen his denial, and render it improbable that the act could have occurred as stated by plaintiff's daughter, or can it be reconciled with her testimony?

It has been earnestly pressed upon you by counsel for the defense that you cannot find for the plaintiff without finding that the defendant committed a rape upon the daughter, for which offense he is now being prosecuted in the state courts. The court instructs you that the rape suit has nothing to do with this case. This is a suit by the plaintiff to recover $20,000 for the *seduction* of his daughter. It does not involve any question of rape; and the evidence as detailed before you does not involve the crime of rape at all. Under the evidence in this case, no court could convict the defendant of rape. The daughter, according to her own testimony, made no outcry; she made no immediate complaint; she made no such resistance as the law requires, but yielded a hesitating and reluctant consent, on her own statement of the affair. The law would not find the defendant guilty of the crime of rape—a felony punishable by death under the laws of Kentucky—under such circumstances. You have nothing to do with the question of rape. The question which you

are to determine is whether the defendant had carnal knowledge of the plaintiff's daughter at the times and places stated by her, and whether, as a result of that intercourse, a child was born to her. That is the vital question here. You need not bother yourselves as to whether the daughter consented. She could not consent, so far as the father, whose rights are alone involved in this suit, is concerned.

Now, gentlemen of the jury, you have the main question before you. Witnesses differ as to dates. They differ as to the time when the defendant returned to his place after the plaintiff reached there with his family early in October. Whether the defendant got there Friday morning or Friday night, Saturday morning or Saturday night, is wholly immaterial. These differences may test recollection, but the fact is not material. Nor is it material whether the second act of illicit intercourse took place two or three days or a week after the first; or after defendant had left the place and come back again, as the daughter stated on the stand. The material question is, did he have carnal knowledge of the girl, and was a child born to her on the tenth July, 1885, as the result of that connection? You may take these dates, or consider the testimony as to dates, and see how far the accuracy of a party's recollection is concerned or affected thereby. Do not be misled by them. The thing for you to look to and determine is, was the defendant guilty of the act charged?

Now, gentlemen of the jury, if you find (and the court has cautioned you to act without allowing any sympathy to bias your judgment, but to weigh the evidence, giving credit to the witnesses you believe have stated the truth) that the defendant was guilty of the act charged,—the seduction of the plaintiff's daughter,—then you are next to consider the question of plaintiff's damages. As I have already stated, the plaintiff, in such cases, was originally awarded damages on the theory of simply compensating him for the loss of his servant's service, together with the expense, labor, and care of her confinement. But, to the credit of our modern jurisprudence, the law has advanced beyond that relic of barbarism, and the father *now* is entitled, not only to compensation for loss of services and expenses attendant upon his daughter's confinement in such cases, but for all that he can *feel* from the nature of the injury. I do not put the case to you as involving vindictive damages, but I do put it to you as strongly as language can express it,—that if you find the defendant had sexual intercourse with the plaintiff's daughter, and, as a result of that intercourse, that a child was born to her July 10, 1885, the plaintiff is entitled to recover, as damages, all that you choose to give him for his wounded feelings, up to the limit of the sum claimed in his declaration, which is $20,000. A father, of course, feels a consolation in the virtue of his daughter. All right-thinking parents must understand that feeling. You may give the plaintiff damages in your discretion, up to the limit claimed in his declaration, for the loss of that comfort and consolation which he had a right to feel in the purity and virtue of his child. You may take into consideration his loss of hope in the future of his daughter, and compensate him for the same. You

may award him damages not only for his mental anguish in the disgrace of his daughter, but for his anxiety as to what is to become of her in the future. You may take into consideration his feeling of anxiety as to. the effect of that daughter's example upon his other child. You may look to the loss to him and his family of social standing and position by reason of the daughter's disgrace. You may consider his mortification, humiliation, and sense of dishonor. The world, as we know, visits upon the girl or woman more severe condemnation for such acts than it does upon the man. She and her family are more or less slighted and ostracized. To a considerable extent, the hopes and prospects of the family, as well as the girl herself, are blighted. We need not stop to consider whether it is right or wrong for the world and society to deal more leniently with the man than the woman for such offenses against virtue and chastity. There may or may not be reason—sound reason—for such discrimination. The fact exists, and may be taken into consideration by you in estimating the injury which the father has sustained by the seduction of his daughter. So that, in respect to damages, it may be summed up in one general sentence or statement: That, if you find the defendant committed the wrong complained of, you may compensate the plaintiff, up to the limit claimed in his declaration, for all that he, as a father, may have felt and suffered for the wrong and injury he has received in the ruin of his daughter.

Your first duty is to determine the question whether the defendant committed the act charged against him. Upon that branch of the case do not allow your sympathy or prejudice to run away with you; but, when you shall have found that fact, then this court cheerfully leaves to your determination what compensation you shall give to the injured father, and tells you that in awarding damages for his wounded feelings, his mental sufferings, his anxiety, his humiliation, and his sense of dishonor, you may go up to the very limits of the amount claimed by the plaintiff in his declaration.

Now, gentlemen, take the case and consider it. I do not think of anything else to which your attention should be called.