## Charles Mighell v. John Stone.

1. REVERSAL—*Inducing Witnesses to Absent Themselves.*—The conduct of a party in inducing a witness for his adversary to depart, is reprehensible, but is not sufficient cause for reversal, especially where such adverse party failed to ask for a continuance on account of the absence of such witness, and where his evidence was not material.

2. REVERSIBLE ERROR—*Erroneous Instructions.*—An instruction, though technically erroneous, is not reversible error where the jury could not have been misled by it.

3. ESTOPPEL—*To Complain of Instructions.*—A party is estopped in the Appellate Court to complain of an instruction given for his adversary, where at his instance a similar instruction was given for him.

4. SEDUCTION—*Right of Recovery in Actions for.*—In an action by a father for the seduction of his daughter, instructions giving the right of recovery for the wounded feelings of the father, and the dishonor and disgrace of his family, are proper.

5. SAME—*Exemplary Damages in Actions for.*—In an action by a father for the seduction of his daughter, it is proper to instruct the jury that the plaintiff is entitled to recover such exemplary damages for the disgrace brought upon him and his family as the jury may deem proper.

6. PLEADING—*In Actions for Seduction.*—The word "debauched" in a declaration for seducing the plaintiff's daughter is sufficient to cover the charge of seduction.

7. DAMAGES—*Fifty-five Hundred Dollars Not Excessive in an Action for Seduction.*—A recovery of $5,500, in an action by a father for the seduction of his daughter, does not exceed the amount which a jury has a legal right to give.

**Trespass on the Case,** for seduction. Appeal from the Circuit Court of Grundy County; the Hon. GEORGE W. STIPP, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

HALEY & O'DONNELL, attorneys for appellant.

The misconduct of a party to a suit, in interfering with the administration of justice by tampering with jurors or witnesses, is not only a contempt of court, but, in cases of suppression of evidence, it amounts to an admission that the evidence would be prejudicial to him in the trial of the case, and it is always ground for a new trial. Lyons v. Lawrence, 12 Ill. App. 532; Barron v. Jackson, 40 N. H. 365.

It is error to instruct the jury that plaintiff is entitled, as a matter of right, to exemplary damages. It is proper to instruct the jury as to actual damages proven that the plaintiff has the right to recover them, but as to exemplary damages, the jury may or may not give such damages in their discretion, and an instruction regarding this latter class of damages which is in its terms mandatory, is erroneous. Browning v. Jones, 52 Ill. App. 597; Consolidated Coal Co. v. Haenni, 146 Ill. 614.

It is the settled rule, in this State, that, even in the case of a minor daughter, she may consent to her own dishonor, so that nothing but actual damages can be recovered by the parent, and unless the evidence shows a seduction within the meaning of the law, damages for seduction should not be given. Leucker v. Steilen, 89 Ill. 545.

S. C. STOUGH, attorney for appellee.

It can not be doubted that formerly the doctrine in actions for seduction, brought by the father against the

seducer of his daughter, was, that the gist of the action consisted in the loss of service. But this doctrine has latterly been so completely frittered away by numerous decisions, both in this country and in England, that hardly a vestige of it now remains. It ought not, then, any longer to be considered as law. When, therefore, it appears from the proof, that the relation of parent and daughter is established, with a right on the part of the parent to require service of the daughter, the law, in order to preserve the form of the action, does and will infer that a loss of service did ensue from the seduction. A distinction no doubt exists, where the action is brought by a master who is not the parent. In this case the loss of service must be proved. Anderson v. Ryan, 3 Gilm. 583; White v. Murtland, 71 Ill. 250, 262; Cooley on Torts, 231.

The ground of the action has often been considered technical, and the loss of service spoken of as a fiction, even before the courts ventured to place the action upon the mere right to claim the services; they frequently admitted the most trifling and valueless acts as sufficient. Anderson v. Ryan, 3 Gilm. 583.

It is apparent, from a perusal of the modern cases and elementary writers in England upon this subject, that the old idea of loss of menial services, which lay at the foundation of the action, has gradually given way to more enlightened and refined views of the domestic relations; these are, that the services of the child are not alone regarded as of value to the parent. As one of the fruits of more cultivated times, the value of the society and attentions of a virtuous and innocent daughter is properly appreciated, and the loss sustained by the parent from the corruption of her mind and the defilement of her person by the guilty seducer, is considered ground for damages, consistent with the first principles of the action. Anderson v. Ryan, 3 Gilm. 583.

The views presented by Chief Justice Nelson place the ground of this action upon the elevated consideration of protecting the moral purity of female character. Such an

object must meet a cordial response in every uncorrupted heart. This opinion also satisfactorily vindicates the modern doctrine, as more in accordance with the original design of the action for seduction. It has long been considered as a standing reproach to the common law that it furnished no means to punish the seducer of female innocence and virtue, except through the fiction of supposing the daughter was a servant of her parent, and that in consequence of her seduction, the parent had lost some of her services as a menial. It is high time this reproach should be wiped out. Anderson v. Ryan, 3 Gilm. 583.

The courts of law, both in America and in England, feeling the justice of this reproach, have from time to time been relaxing the rule that proof of loss of service must be made before the action can be sustained, until, by the decisions above cited, they have entirely rejected the fiction of loss of service as the foundation of the action, and thereby in effect placed the action on its true basis, that is, upon the loss of character and happiness of the unfortunate female, and the consequent injury inflicted on the heart of the parent. This action ought, then, no longer to be considered as a means of recovering damages for the loss of menial services, but as an instrument to punish the perpetrator of a flagitious outrage upon the peace and happiness of the family circle. Anderson v. Ryan, 3 Gilm. 583.

Where a father sues for the seduction of his daughter, while she actually or constructively resides in his family, or where a person, standing *in loco parentis*, brings the action for seducing a female residing with him, no proof of actual loss of service is necessary; but the law, from the relation itself, will presume it. The loss of service being in such a case a *presumptio juris*, it requires no proof, can not be disproved by the defendant, and must be found to exist by a court or jury. Anderson v. Ryan, 3 Gilm. 583.

In this class of cases, the loss of services may be the alleged injury, but the injury to the character of the family is the real ground of recovery when the cause of action

Mighell v. Stone.

relates to the wife or daughter. The degradation which ensues, the distress and mental anguish which necessarily follow, are the real causes of recovery. It has not been the policy of the law to confine the recovery by the injured party to the precise amount of money which he has proved he has lost by the deprivation of labor ensuing from the injury. But the law has, in a more just spirit, allowed a recovery for injury to family reputation and for anguish growing out of the injury. Yundt v. Hartrunft, 41 Ill. 9.

The amount of damages in such an action is very much a matter of feeling, to be controlled by no rigid rule. Crose v. Rutledge, 81 Ill. 266.

The admission of testimony that the defendant had promised marriage was in conformity with nearly all the authorities. Mains v. Cosner, 62 Ill. 465.

The use of seductive arts or promises by the man is not an essential part of the offense. Am. & Eng. Ency. of Law, Vol. 21, 1009.

It was not necessary for the plaintiff to show that the defendant used flattery, or made false promises to his daughter; it was sufficient if the seduction resulted from the solicitation and importunity of the defendant to the daughter to indulge in criminal intercourse, in consequence of which she consented. * * * It can not be at all important by what means, or by which of the multifarious devices of the seducer he may have prevailed in the accomplishment of his purpose. It is enough that by any means or arts he tempted or persuaded his victim to the surrender of her chastity. Am. & Eng. Ency. of Law, Vol. 21, 1009; Reed v. Williams, 5 Sneed (Tenn.), 580; 73 Am. Dec. 157.

Mr. Justice Lacey delivered the opinion of the Court.

This was an action on the case by appellee against appellant, alleging the seduction and debauching of the former's unmarried daughter, Rena M. Stone, a girl of about nineteen years of age, by the appellant, a young man of about twenty-three years, and the consequent pregnancy of the daughter,

and her being delivered of a child, claiming damages for the loss of services of his daughter, she being then his servant, and also the usual damages in such case, of the loss of her society, and disgrace thereby put upon himself and family.

There was a trial by a jury and verdict and judgment for appellee for $5,500.

The circumstances of the alleged seduction were that appellant, who resided with his mother, and appellee, who resided with his wife, two daughters and a son, the said Rena M. Stone being one of the daughters, were neighboring farmers, each residing on his own farm.

In the spring or summer of 1894, appellant asked and obtained permission of appellee to take his daughter Rena to a dance at one of the neighboring houses, which appellant did, in his buggy. At this time they were accompanied to the dance by appellee's other daughter.

From this time, April, 1894, until in June, 1895, appellant was the suitor of Rena, and took her out riding evenings in a buggy and to various dances and to a circus, until the latter part of September, when appellant succeeded in having sexual intercourse with her, while out late at night by the road side, the two alighting from the buggy and performing the act on the ground. This act of sexual intercourse was followed by two other acts in the buggy, on other occasions while Rena and appellant were out riding late at night.

At the second or third act Rena became pregnant, and was delivered of a female child July 14, 1895.

The appellee cared for and procured medical attendance for his daughter during her confinement and subsequent sickness, but there was no evidence of the value of such services or of the amount of money appellee paid out for such medical services.

The evidence tends to show that Rena's consent to the acts of sexual intercourse, especially the first, was procured by a persistent course of importunities and blandishments on the part of appellant, and a promise that he would marry her if she became pregnant, and that when she became with

child he refused to do so, but left the girl to suffer her mortification and disgrace alone, thus casting serious and lasting disgrace on the entire family, including appellee, and caused him untold misery and mortification.

The evidence tended to show that appellee's daughter Rena had been in delicate health from the time she was fourteen years of age and afflicted with nervous disorder; that she had been under the care of various physicians, had been for over a year confined to her bed, and had in fact only partially recovered her health a short time prior to appellant's attentions to her.

The evidence further tended to show that she had always been of good moral character and reputation before that time, and had been in society but little.

The appellant, by his counsel, insists that the evidence fails to support the verdict, in that there is no evidence to establish the charge of seduction, and that the carnal intercourse took place because the appellee's daughter "was devoid of the ordinary instincts of virtue;" hence no grounds in the evidence for the giving of exemplary damages.

We have examined the evidence carefully, and see no room for doubt that Rena M. Stone was a virtuous girl, and that her consent to the immoral acts was obtained by appellant by acts and conduct that marks him as a seducer, and that under circumstances of peculiar aggravation, and the jury was justified in so finding by its verdict and in awarding punitive damages,

The appellant claims that he should have a new trial because appellee induced one of his witnesses to depart, by whom he expected to prove that other young men than himself had kept Rena's company during the year 1893. The name of the witness was Elmer Conrie, who it is claimed had kept the company of Rena prior to the time that appellant commenced his attentions. While the conduct of the appellee was reprehensible in that regard in the highest degree, we do not think that it would be sufficient cause for reversal. First, because the appellant did not ask

for a continuance on account of the witness' absence; secondly, the evidence was not of a kind that was very material, but was merely cumulative.

It is complained that the court erred in admitting improper evidence. To this charge we have to say that though the court could have properly excluded some of the objectionable evidence, yet if any error was committed in that regard it could have had no injurious bearing against the appellant, nor could it have misled the jury, and any such slight errors would not be grounds for reversal.

The first, third and fourth of appellee's instructions are complained of by appellant.

The first, that it submitted the right of recovery for physician's services furnished by appellee for his daughter in confinement, "as the jury believe. from the evidence he has sustained," when there was no evidence that appellee had paid out or was liable for any money for such purpose. We do not think this was reversible error even though technically erroneous, for the reason that the jury could not have been misled. If there was no evidence the jury would not allow for any charge of that kind under the instruction. And then appellant is estopped to complain, for a similar instruction was given at his own instance, permitting recovery for such expenditure, if any.

The appellant objects to the third and fourth instructions given for appellee, in that they give the right of recovery for the wounded feelings of appellee and the dishonor and disgrace of appellee's family, in case the appellee's daughter was seduced by the appellant in manner and form alleged in the declaration.

It is objected that there was no charge in the declaration of seduction, but only appellee's daughter was by appellant "debauched," and that he carnally knew her and that she became pregnant, etc.

We think the declaration is in the usual form and according to approved precedents (2 Chitty Pl. p. 643; 1 Chitty Pl. p. 134,) and that the word "debauched" is intended to cover the charge of seduction. White v. Murtland, 71 Ill. 250.

Mighell v. Stone.

The question of seduction was before the jury on the issue made in the declaration, and if made out it entitled the appellee to recover for the damages specified in the instructions complained of.

Besides this there could have been no misunderstanding on the part of the jury on this issue, as appellant's instructions specifically defined what amounted to seduction, and unless it was proven no damages of the kind could be recovered.

We see no error in these instructions when explained by those given for appellant. The fourth instruction does not assume the appellee was entitled as matter of right to exemplary damages. It told the jury that appellee was entitled to recover such damages, among other, for the disgrace brought on himself and family as the jury should deem proper. This instruction is not subject to the criticism offered, for the reason that under it the jury had a discretion to say whether any such damages were proper under the evidence.

If the jury gave any on such account appellee was entitled to it, but not if the jury deemed such damages improper under the evidence. The court did not err in modifying or refusing any of appellant's instructions.

The amount of damages, while large, we do not think exceeded what the jury had a legal right to give. The consequent injury to appellee and his family, caused by appellant in seducing his daughter, can scarcely be compensated for or satisfied in money.

In some communities and in the minds of good citizens the father is morally justified in taking the law in his own hands and slaying the seducer of his wife or daughter. While such a sentiment can not be approved, as being opposed to the laws of the land, yet it shows with what horror and indignation such an act is received in a civilized community.

Seeing no error in the record the judgment of the court below is affirmed.