Gunder v. Tibbits, Adm.

## GUNDER ET AL. v. TIBBITS, ADMINISTRATOR.

[No. 18,400.   Filed December 14, 1899.]

APPEAL AND ERROR.—*Harmless Error.*—Available error cannot be predicated upon the rulings of the court on the first paragraph of complaint, where the special verdict followed the second paragraph. *p. 593.*

SEDUCTION.—*Complaint.*—*Motion to Make More Specific.*—Where a complaint for seduction charged that defendant took advantage of plaintiff's youth, loneliness, and ignorance of the ways of the world, and by reason of his own maturity, experience, and position, by artifices and persuasions accomplished her ruin, no error was committed in overruling a motion to make the complaint more specific by stating the facts constituting the artifices and persuasion employed by defendant. *pp. 593-598.*

SAME.—*Complaint.*—*Joinder of Causes.*—A complaint alleging that defendant by his artifices and persuasions seduced plaintiff and induced her to have sexual intercourse with him, from which she became pregnant with child on two occasions, and that on each occasion he and his codefendant conspired together and induced her to submit to an abortion in order to prevent childbirth, and the consequent exposure of defendant, states a single cause of action against defendants jointly, and no error was committed in denying a motion to separate the complaint into paragraphs and overruling a demurrer for misjoinder of causes of action. *pp. 598-602.*

SAME.—*Special Verdict.*—A finding by the jury in an action for seduction that plaintiff was chaste prior to the time of her intercourse with defendant, and that she yielded her person to him because of her confidence in him, her belief in his flattery, persuasions and protestations of affection practiced upon her for a long time prior thereto, and her reliance upon his continued promises of friendship, protection, and assistance in getting whatever she might ask for or need, constituted a sufficient finding of the ultimate facts to show the means employed by defendant in seducing plaintiff. *p. 603.*

SAME.—*Limitation of Actions.*—Successive acts of sexual intercourse constitute a continuous wrong, consummated in the last act, and an action for seduction brought within two years of the final act of sexual intercourse is not barred by the two years' statute of limitation, although the first act of intercourse occurred more than four years before the action was brought. *pp. 603-605.*

SAME.—*Abortion.*—*Liability of Physician.*—A physician who performed an operation on a woman for the purpose of producing an abortion in order to conceal knowledge of the seducer's illicit inter-

| | |
|---|---|
| 153 | 591 |
| 154 | 580 |
| f154 | 634 |
| 154 | 652 |
| 155 | 70 |
| 155 | 156 |
| 155 | 460 |
| 155 | 575 |
| 155 | 581 |
| 155 | 597 |
| 156 | 295 |
| 156 | 523 |
| 153 | 591 |
| 157 | 25 |
| 157 | 224 |
| f157 | 461 |
| 153 | 591 |
| 158 | 165 |
| 158 | 271 |
| 158 | 366 |
| 158 | 454 |
| 158 | 488 |
| 158 | 525 |
| 153 | 591 |
| 159 | 387 |
| 153 | 591 |
| 164 | 437 |

course with her is liable in an action for seduction, although he did not know that his codefendant seduced plaintiff. *pp. 605, 606.*

CONTINUANCE.—*Absence of Witness.*—The failure to grant a continuance on account of the absence of a witness will not be reviewed on appeal, where it is shown that the witness was old and infirm, and the fact sought to be proved by the absent witness was testified to by fourteen other witnesses. *pp. 606, 607.*

INSTRUCTIONS.—*Seduction.*—*Chastity of Plaintiff.*—*General Reputation.*—*Evidence.*—*Burden of Proof.*—An instruction in the trial of an action for seduction, that the law presumes, in the absence of evidence, that plaintiff was virtuous before her alleged seduction, and that in weighing the evidence as to her general reputation for chastity the jury were not bound by that evidence to find that she was not virtuous, but must consider all the evidence in the case in determining whether or not she was virtuous, was correct, where a proper instruction was given as to burden of proof. *p. 607.*

EVIDENCE.—*Exceptions.*—*Offer to Prove.*—An exception is not properly saved to the action of the court in sustaining an objection to a question propounded to a witness by defendant, where defendant excepted to the ruling and afterward made the offer to prove. *pp. 607, 608.*

DAMAGES.—*Seduction.*—*Judgment.*—A verdict in an action for seduction assessing plaintiff's damages at $5,000 will not be set aside as excessive, where the judge who heard the case approved the assessment, and there is nothing in the record to show that the verdict was the offspring of prejudice or passion. *pp. 608, 609.*

From the Wells Circuit Court.   *Affirmed.*

*H. J. Paulus, F. C. Dailey, A. Simmons, J. S. Dailey, H. Brownlee* and *O. L. Cline,* for appellants.

*A. N. Martin* and *W. H. Eichhorn,* for appellee.

BAKER, J.—Action by Dora Troxell against appellants for damages. Complaint in two paragraphs. Motion by each appellant to make the complaint more specific, motion by each appellant to require plaintiff to state her causes of action in separate paragraphs and number them, and separate demurrers for want of facts and for misjoinder of causes of action, by each appellant to each paragraph of complaint, were overruled. Appellants separately filed answers of general denial and of the two years statute of limitations. Reply in

Gunder *v.* Tibbits, Adm.

denial.  Motion by appellants for continuance overruled.
Request by appellants for special verdict.  Trial, and special
verdict.  Motion by each of the parties for judgment on the
special verdict.  Appellants' motion overruled.  Separate
motions for new trial by each appellant overruled.  Judgment
on special verdict in favor of plaintiff.  Separate exceptions
were reserved by each appellant to each adverse ruling.  All
motions, instructions and the evidence are properly incorpo-
rated in bills of exceptions, which are properly in the record.
Plaintiff died after judgment was rendered and before
this appeal was perfected.  The appeal is prosecuted against
the administrator of plaintiff's estate.  The death of the ad-
ministrator since the submission of the cause is suggested,
and the request is made that judgment be rendered as of the
date of submission.  Appellants separately assign errors on
the various adverse rulings above mentioned.

The special verdict follows the second paragraph of com-
plaint.  The rulings on the motions and demurrers addressed
to the first paragraph may therefore be passed by; for, even
if they were found on examination to be erroneous, they
were harmless.  *Lime City, etc., Assn.,* v. *Black,* 136 Ind.
544; *Tewksberry* v. *Howard,* 138 Ind. 103; *Woodard* v.
*Mitchell,* 140 Ind. 406; *Marvin* v. *Sager,* 145 Ind. 261;
*Laughery Turnpike Co.* v. *McCreary,* 147 Ind. 526; *Louis-
ville, etc., R. Co.* v. *Schmidt,* 147 Ind. 638; *Smith* v. *Wells
Mfg. Co.,* 148 Ind. 333; *Illinois, etc., R. Co.* v. *Cheek,* 152
Ind. 663.

The second paragraph alleges "that plaintiff now is and
always has been an unmarried female; that she arrived at the
age of twenty-one years on the 17th day of March, 1896;
that on or about the 1st day of March, 1892, the defendant.
Gunder was, and now is, a merchant of the city of Marion,.
State of Indiana; that at said time plaintiff was an orphan,.
with neither father nor mother, and obliged to and did earn
her own living by honest and honorable labor as a servant in.

different families in said city; that up to that time she was
virtuous and of an unspotted character, and had a good name
and reputation for virtue and chastity; that at that time the
defendant Gunder was a man of mature age, married, of
wealth and high social position; that, intending to wrong, in-
jure, debauch, and seduce this plaintiff, who was then and
there of the age only of seventeen years, he then and there
took advantage of her youth and inexperience, and of her po-
sition in the world as being unprotected and unguarded by
any friend or relatives, and of his experience and position,
and by his artifices and persuasions, and by his representa-
tions to her then made that it would not injure or damage
her in any way, did seduce and debauch her, and induced
her to have sexual intercourse with him, to wit, on or about
the first day of March, 1892; that he obtained such complete
control over the plaintiff, by means of his artifices and per-
suasions, that he continued to debauch her and to have
sexual intercourse with her at various times from said 1st day
of March, 1892, to about the month of February, 1895; that
by reason of such seduction and carnal knowledge and sexual
intercourse with said defendant, plaintiff became sick with
child at two different times, the first time on or about the 1st
day of March, 1893, and the second time on or about the 1st
day of March, 1895; that at both times the plaintiff suffered
great pain and distress, and was unable to take care of herself,
and became very weak and helpless in body and mind, and
completely under the control of the defendant; that at both
said times, when the plaintiff had become pregnant as afore-
said, and while in said weak and distressed and helpless con-
dition, and while she was thus under the control of defendant,
all resulting from said seduction and sexual intercourse with
him, he communicated the fact of such seduction and of his
unlawful acts towards this plaintiff and of her pregnant condi-
tion to his codefendant Thomas C. Kimball; that on each of
such occasions the defendants conspired and agreed together,
in order to avoid publicity of the action of the defendant Gun-

der, that they would advise and persuade plaintiff to submit to an abortion, in order to prevent childbirth and the consequent exposure of the defendant Gunder; that, pursuant to such agreement and conspiracy, the defendants came to the plaintiff at divers times, when she was thus weak and helpless, and advised and persuaded her, by their words and representations made to her, at both said times when she was thus pregnant, that she was physically unable to give birth to her child, and that she would surely die during the progress of natural childbirth, and that it was absolutely necessary to have an abortion produced on her in order to save her life; that both of said defendants, at each of such times when plaintiff was pregnant, made such representations to her, not for the purpose of saving her life, but solely for the purpose of inducing her to submit to an abortion in order to conceal all evidence of defendant's wrong to plaintiff; that said defendant Kimball, as both of the defendants and plaintiff well knew, was then and there a physician of great skill, knowledge, and reputation as a physician, and possessed the complete confidence of this plaintiff; that for this reason the plaintiff believed his words to be true, and relied upon the statements of both the defendants that it was necessary for these abortions to be performed in order to save her life, and by reason of such representations, and by reason of her youth and inexperience, and by reason of her confidence in both the defendants, she became and was afraid, at both of said times when she was thus pregnant, that she would die unless she would allow the defendants to produce such abortions upon her; that thus by words and persuasions and representations of inevitable death to come upon her, and by reason of her youth and inexperience and fear of death, the defendants persuaded and forced this plaintiff to submit to two separate and distinct abortions which they produced upon her by giving her medicines and by unlawfully using instruments on and in her person; that the first of said abortions was produced about the first day of March, 1893; and the second about the

first day of March, 1895; that at neither of said times was such abortion necessary for the physical safety of this plaintiff; that at each of said times defendants were both aware of the seduction of the plaintiff by defendant Gunder, and that she was pregnant with child by him, by reason of the aforesaid sexual intercourse had by him with her, and that the sole object of the defendants in persuading the plaintiff to submit to each of such abortions was for the purpose of concealing evidence of the wrong practiced by the defendant Gunder upon the plaintiff and not through any concern for plaintiff's physical welfare; that in consequence of such seduction and carnal intercourse, and by reason of said several abortions, plaintiff suffered greatly in her health, became distressed in her mind, and became so sick for many months that she suffered great pain and mental agony and was prevented from her work and from transacting her necessary business affairs; that because of such seduction and abortions plaintiff has been greatly injured in her reputation and good name, has been greatly injured and disturbed in her peace of mind, her health has been injured and ruined for life, and she has become unable to earn a living, has incurred large and continuous indebtedness for medical treatment and board bills, has been rendered unable to earn her living, all of which are the direct results of the acts of the defendants, as aforesaid. Plaintiff further alleges that the defendant Kimball, in all that he did as alleged hereinbefore, conspired and agreed with his codefendant Gunder, with full knowledge of the acts of the latter, and with knowledge that the defendant Gunder had seduced, debauched, and made pregnant the plaintiff, to aid defendant Gunder in concealing evidence of the guilt of the latter by producing such abortions; that all of said wrongful acts occurred in the State of Indiana."

It is claimed that the court should have sustained the motion to require the plaintiff to make her complaint more specific by stating the facts that constituted the "artifice and

persuasion" employed by Gunder.    Appellants refer to the
cases of *Rees* v. *Cupp*, 59 Ind. 566; *Hart* v. *Walker*, 77
Ind. 331; *McIlvain* v. *Emery*, 88 Ind. 298; *Hodges* v. *Bales*,
102 Ind. 494; *McCoy* v. *Trucks*, 121 Ind. 292; *Shewalter*
v. *Bergman*, 123 Ind. 155.    None of these cases states what
degree of particularity is required in alleging the means
used to overcome the plaintiff's chastity.    In nearly all of
them, no motion to make more specific was under considera-
tion; but, in holding the complaints good against demurrers
for want of facts, expressions were used that if the defend-
ants desired more specific statements they should have filed
motions to that effect.    For example, in *Rees* v. *Cupp*,
*supra*, it was said:    "Perhaps it might have been made more
certain on motion, but as no motion for that purpose was
made, we must hold the complaint good."    In *Wales* v.
*Miner*, 89 Ind. 118, this statement was characterized as a
"doubtful dictum".    And the qualifying "perhaps" demon-
strates that it cannot be accepted as a declaration that the
complaint in that case, which is very similar to the present
one in its averments of means, should or could have been
made more specific on motion.    Here, the motion asks only
for a particularization of the "artifice and persuasion" used.
The complaint exhibits other means that were also employed
in seducing plaintiff.    And the very word "seduce" means
that chastity yields to the solicitation of the seducer, and not
to the victim's own lust or the pay of the harlot.    Plaintiff
was an orphan, young, poor, unfriended, inexperienced.
Gunder was mature, married, rich, of high social standing,
experienced.    It is averred that Gunder, by taking advan-
tage of her youth, her loneliness, and her ignorance of the
ways of the world, and by taking advantage of his own ma-
turity, experience and position, accomplished her ruin.    No
motion was made to have these allegations made more specific
by detailing how his age and experience operated upon her
youth and inexperience.    So, the complaint contained a gen-
eral statement of means employed to effect the seduction,

which was untouched by the motion; and the ruling was right for this reason if no other. But there is no valid reason why a more particular statement should be made than was made. It would be reciting evidence, rather than pleading the ultimate facts, to set forth in the complaint the items of languishing glances, sighs, clasping of hands, touches, kisses, caresses, flatteries, declarations of love, moonlight rides and poetic effusions, which are some of the "artifices and persuasions" that may be found in the thousand odd pages of evidence.

On the motion to separate the complaint into paragraphs and on the demurrer for misjoinder of causes of action, the question arises whether the complaint states a single cause of action against appellants jointly, or three separate causes of action, namely, one against Gunder alone for seduction, and two against appellants jointly for abortion. Appellants refer to the cases of *Palmer* v. *Crosby*, 1 Blackf. 139; *Allen* v. *Wheatley*, 3 Blackf. 332; *Boaz* v. *Tate*, 43 Ind. 60; *Baddeley* v. *Patterson*, 78 Ind. 157; *Everroad* v. *Gabbert*, 83 Ind. 489; *Symonds* v. *Hall*, 37 Me. 354; *Bath* v. *Metcalf*, 145 Mass. 274, 14 N. E. 133; *Bard* v. *Yohn*, 26 Pa. St. 482. These cases illustrate the general principle that an action can not ordinarily be maintained against defendants jointly, if each commits a tort independently of the acts of the others, although the consequences of the separate torts may become united. But, on the same footing with this, is the principle that all the parts of one continuous wrong, with the damages accruing from each part, constitute but one entire cause of action, which may properly be stated in one count against the wrongdoer. Thus, in *Whalen* v. *Layman*, 2 Blackf. 194, 18 Am. Dec. 157, breach of promise of marriage and seduction by means of the promise constituted but one cause of action. The same was true in *King* v. *Kersey*, 2 Ind. 402. In *Cates* v. *McKinney*, 48 Ind. 562, 17 Am. Rep. 768, and in *Felger* v. *Etzell*, 75 Ind. 417, it was held that damages for seduction were not allowable under a complaint counting on

breach of promise only. Similarly, it might well be held that damages for breach of promise are not allowable under a complaint counting on seduction only. That is, the plaintiff, if she elects to aver but a part of the injury and damage, will be limited in proof and recovery to the matter complained of; but, if she chooses to set forth the whole injury and damage, she may include in one count all of the consequences of the continuous wrong. In *Wilds* v. *Bogan*, 57 Ind. 453, breach of promise, seduction, pregnancy, and childbirth were the elements of damages flowing from the continuing wrong set forth in one paragraph. In *Kurtz* v. *Frank*, 76 Ind. 594, 40 Am. Rep. 275, the action was brought to recover damages for breach of promise and seduction. It is frequently said in the books, in relation to cases of this character, that the cause of action is the breach of promise and that the seduction is an aggravation of the damage occasioned by the breaking of the promise. In this Kurtz case the jury were instructed that, if fraud was an ingredient in the conduct of the defendant in making or breaking the promise of marriage, they might allow exemplary damages. The court, in approving the instruction, said: "The seduction of the appellee by the appellant was clearly proved, and the inference may not be said to be entirely unwarranted that seduction, and not marriage, was the original and persistent design of the defendant." Now, if one were asked (on the supposition that it is necessary to name an action by its chief characteristic) which is the cause of action and which is the aggravation of damage, he might answer that the cause of action is the seduction and that the damages are aggravated by reason of the seduction's having been accomplished by means of a fraudulent and deceitful promise of marriage beyond what the damages would have been if the plaintiff had yielded merely to flattery and protestations of love. An action may be founded on seduction alone, or on breach of promise alone. If each is always a separate and distinct cause of action, they never could prop-

erly be united in one paragraph, which, legally, must state but one cause of action. But, it is held that if both elements of damages result from one continuous course of conduct, they may be included in one count. The case of *Bishop* v. *Redmond*, 83 Ind. 157, as explained in *Henneger* v. *Lomas*, 145 Ind. 287, 299, 32 L. R. A. 848, was a suit to annul a marriage for fraud; to recover damages for the fraud through which plaintiff suffered by seduction, pregnancy, childbirth, and the false marriage; and to collect the damages from lands fraudulently conveyed; all, as one cause of action. In *Haymond* v. *Saucer*, 84 Ind. 3, it is said: "The complaint charges that the seduction occurred in July, 1878, and that prior thereto the plaintiff's reputation was good; the testimony of the plaintiff is that the first sexual intercourse between her and the defendant occurred in the preceding December, and upon this it is insisted that the intercourse had in July following did not constitute a seduction. This was a question for the jury. If the subsequent intercourse was the result of the first, and of the promise then made, and of the persuasions then employed, it was a seduction; and, where such successive acts are shown to have occurred under an engagement to marry, the jury may properly regard them as *constituting elements of one wrong, consummated in the last act of intercourse*." In *McCoy* v. *Trucks*, 121 Ind. 292, it is held: "In a case of this character the plaintiff is not confined to evidence of one act, nor to evidence covering one particular day or week, but she has a right to give evidence covering many acts and extending over a considerable period of time. She has a right to show *the continued conduct of the defendant towards her*. *Clark* v. *Fitch*, 2 Wend. 460, 20 Am. Dec. 639. The plaintiff had a right to prove the consequences which resulted from the defendant's wrong. * * * Pregnancy, childbirth, sickness, and like matters may be shown, and may be considered by the jury in estimating the compensation to be awarded the plaintiff." So, instead of debating in any such case whether abortion, or se-

Gunder v. Tibbits, Adm.

duction, or breach of promise is the name of the action, and the remaining elements are matters in aggravation, it is simpler to say that the action is for the damages resulting from the various consequences of one continuous wrong.

There are many cases in which various acts have been held to be so connected as to constitute but one cause of action. 5 Ency. Pl. & Pr. 309; *Cole v. Hoeburg*, 36 Kan. 263; *Smith v. Braun*, 37 La. Ann. 225; *Boynton v. Kellogg*, 3 Mass. 189; *Sheahan v. Barry*, 27 Mich. 217; *Hood v. Sudderth*, 111 N. C. 215, 16 S. E. 397; *Perry v. Orr*, 35 N. J. L. 295; *Price v. Price*, 2 Hun (N. Y.) 611; *Watts v. Hilton*, 3 Hun (N. Y.) 606; *Smith v. Rathbun*, 22 Hun (N. Y.) 150; *Bebinger v. Sweet*, 1 Abb. N. Cas. (N. Y.) 263; *Exner v. Exner*, 2 Abb. N. Cas. (N. Y.) 108; *Sheldon v. Lake*, 9 Abb. Pr. N. S. (N. Y.) 306; *Langdon v. Lake Erie, etc., R. Co.*, 27 Abb. N. Cas. (N. Y.) 166; *Newcombe v. Chicago, etc., R. Co.*, 28 N. Y. St. 716; *People v. Tweed*, 63 N. Y. 194; *Kirkwood v. Miller*, 5 Sneed (Tenn.) 455; *Klopfer v. Bromme*, 26 Wis. 372; *Damon v. Damon*, 28 Wis. 510; *Leavitt v. Cutler*, 37 Wis. 46; *Moon v. McKnight*, 54 Wis. 551, 11 N. W. 800.

First, as to Gunder. It is charged that he set out to seduce plaintiff and did it; that, by the same means employed to subdue her chastity to his lust, he continued the relations until pregnancy resulted; that, for the purposes of concealing the fact of the seduction and of ridding himself of paternal responsibilities, and by means of his control over plaintiff and by false representations as to her physical ability to give natural birth to the child, he procured her to submit to an abortion; that, continuing his seductive influence, he kept up his lecherous conduct until he begot another child, which he disposed of for the same purposes and by the same means. Under this complaint, he is guilty of one continuous course of fraud and deceit, and is answerable for all the consequences.

Now, as to Kimball. He did not seduce the girl and get her with child. When Gunder first approached him, he was not in any way responsible for the wrongs that plaintiff had suffered up to that time. He was under no compulsion to act. If he produced the abortion, he could legally do so on the basis that he honestly believed the operation to be necessary to save the mother's life. But on no other. Why did he represent to her that an operation was necessary to save her life? Because he had her welfare in view? No. He violated the law to aid Gunder in effecting his purposes of concealing the fact of the seduction and of ridding himself of paternal responsibilities. Kimball would have been liable to plaintiff for the physical injuries produced by the unlawful abortion, if he alone, for his own purposes, had fraudulently induced her to submit to the operation. And Gunder would have been liable for the injuries to person and character resulting from seduction, pregnancy and childbirth, if there had been no abortion. If each had acted independently, the plaintiff might have been compelled to pursue them separately, although the consequences of their acts united. But Kimball was the hand of Gunder in furthering Gunder's wrong. The consequences of the operation were intentionally intermingled by Kimball with the natural consequences of Gunder's sexual intercourse with plaintiff. When Gunder came to Kimball, the incident was not closed; and Kimball willingly joined in and helped on a wrong that was not completed,—a wrong that constituted, when completed, but one cause of action against Gunder. And so, if Kimball chose to come in at any stage, he too is liable for the whole; for the law will not undertake to apportion damages in such cases. Addison on Torts (7th ed.), 93; Bishop on Non-Contract Law, 229; Clerk & Lindsell on Torts (2nd ed.), 53; Hale on Torts, 123; Jaggard on Torts, 213; *Freeman* v. *Scurlock*, 27 Ala. 407; *Clark* v. *Bales*, 15 Ark. 452; *Lewis* v. *Johns*, 34 Cal. 629; *Brooks* v. *Ashburn*, 9 Ga. 297; *Whitney* v. *Turner*, 2 Ill. 253; *Olsen* v. *Upsahl*, 69 Ill. 273;

*Wallard* v. *Worthman*, 84 Ill. 446; *Jonsson* v. *Lindstrom*, 114 Ind. 152; *Keegan* v. *Hayden*, 14 R. I. 175.

The special verdict consisted of interrogatories and answers. It is urged that the verdict does not disclose the means employed by Gunder in seducing plaintiff. The jury found that plaintiff was chaste down to March 1, 1892; that she then yielded her person to Gunder because of her confidence in him, her belief in his flattery, persuasions and protestations of affection practiced upon her for a long time prior thereto, and her reliance upon his continued promises of friendship, protection and assistance in getting whatever she might ask for or need. Appellants insist that the jury should have found facts from which the court might say as a conclusion of law whether or not plaintiff "yielded", "believed" and "relied". These were ultimate facts for the jury to find from all the evidence. The effect of the contention would be to substitute the evidence for the verdict. In *Breon* v. *Hankle*, 14 Ore. 494, cited by appellants, the evidence was examined and found to contain nothing on which to base certain instructions to which the defendant had reserved exceptions.

It is said that the special verdict finds facts supporting the answers of the two years statute of limitations. The verdict finds that plaintiff was born March 17, 1873; that this action was commenced on March 23, 1896, when plaintiff was two years and six days past her majority; that the first act of sexual intercourse occurred March 1, 1892; that the first abortion was produced in March, 1893, and the second in February, 1895; that Gunder kept up his relations with plaintiff until about February 1, 1895. Appellants cite *Franklin* v. *McCorkle*, 16 Lea (Tenn.) 609; *Dunlap* v. *Linton*, 144 Pa. St. 335, 22 Atl. 819; *Safford* v. *People*, 1 Parker Cr. R. (N. Y.) 474; *Cook* v. *People*, 2 Thomp. & Cook (N. Y.) 404; *People* v. *Nelson*, 153 N. Y. 90, 46 N. E. 1040; *People* v. *Clark*, 33 Mich. 112. The last four cases support the proposition that in criminal prosecutions the statute begins to run

from the time of the first act of sexual intercourse. The first two cases affirm the same doctrine in civil actions by the father of the victim. *Franklin* v. *McCorkle, supra,* was repudiated in *Davis* v. *Young,* 90 Tenn. 303, 16 S. W. 473, wherein it was said: "The seduction is made up of the several violations by the defendant, and he will not be permitted to confine her remedy to the first illicit act as the only one of seduction, and, when sued, relieve himself by showing that first act to have occurred more than twelve months before suit brought. Such limitation places it in the power of the unprincipled to effect the ruin of the confiding female, and then, by flattering the confidence and hopes of his victim, persevere in his debauchery at his will, and at last ignore all his cruel deceptions of the meantime, and insult the disgrace he has brought about by pleading the twelve months statute as applicable to the first act in his series of villainy. It should never be that one, by confessing his infamy, may, by multiplying the evidences of that infamy, acquit himself from accountability for its consequences. To hold that, under promise of marriage deceitfully made for the purpose of seduction, the first illicit act completes the offense, and the statute then begins to run, is to offer a reward to the unscrupulous to do many wrongs that he may escape the bitter consequences of his deceit, and to have him know that the longer he practices his frauds and imposes upon a trusting woman, the more sure he is of going unwhipped of justice. *Franklin* v. *McCorkle,* 16 Lea 609, is overruled." And in *Ferguson* v. *Moore,* 98 Tenn. 342, 39 S. W. 341, the same rule was applied in an action by a girl for her own seduction. In *People* v. *Millspaugh,* 11 Mich. 277, and *Norton* v. *State,* 72 Miss. 128, 16 South. 264, and 18 South. 916, it was held that in criminal cases the statute did not begin to run until the last act of sexual intercourse, under and solely in consequence of a renewed promise of marriage, was had. The quotations hereinbefore given from *Haymond* v. *Saucer,* 84 Ind. 3, and *McCoy* v. *Trucks,* 121 Ind. 292, seems in har-

mony with the doctrine that the successive acts constitute but
one wrong, consummated in the last act.   And why should
not this be so?   If an act is done under any sort of con-
straint, plain justice forbids the defendant to count the time
of his control as a part of the period of limitations.   In hold-
ing that this civil action is not barred, it may be needless to
say that what the rule would be in prosecutions under the
penal code is not hereby decided.

In behalf of Kimball, a further attack upon the special
verdict is made in this, that it fails to find Kimball's knowl-
edge of the seduction.   In all other respects, the verdict fully
sustains the complaint.   The complaint charged, in sub-
stance, that Kimball performed the operations, not because
he thought them necessary, but criminally and in aid of
Gunder's purposes of concealing the fact of pregnancy and
the fact of his illicit intercourse under seduction.   The ver-
dict finds that he performed the operations, not because he
thought them necessary, but criminally and in aid of Gun-
der's purposes of concealing the fact of pregnancy and the
fact of his illicit intercourse.   Kimball says, in short,
that, although he committed a crime and inflicted serious in-
juries upon plaintiff's person, and although he knowingly par-
ticipated in a going wrong for the  purpose of helping Gun-
der conceal the pregnancy and illicit intercourse, he must be
excused from paying in this action because he did not know
that Gunder had seduced plaintiff.   In other words, the
claim is that a joint wrongdoer, who comes in at the elev-
enth hour, may defend on the ground that he did not stop
to find out all that had been done before he took part.   Since
Gunder's continuous course of conduct constituted an entire
wrong, it is immaterial how far or with what knowledge of
prior steps Kimball allowed himself knowingly to be used
in carrying on some of Gunder's purposes.   Plaintiff was en-
titled to damage for the wrong as an entirety in such amount
as the jury thought the most culpable defendant ought to
pay; and if Kimball did not want to be liable for the whole,

he should have kept out. *Hair* v. *Little*, 28 Ala. 236; *Clark* v. *Bales*, 15 Ark. 452; *Currier* v. *Swan*, 63 Me. 323; *Halsey* v. *Woodruff*, 9 Pick. 555; *Fuller* v. *Chamberlain*, 11 Metc. 503; *Warren* v. *Westrup*, 44 Minn. 237, 46 N. W. 347; *Bell* v. *Morrison*, 27 Miss. 68; *Beal* v. *Finch*, 11 N. Y. 128; *Keegan* v. *Hayden*, 14 R. I. 175.

Appellants complain of the refusal of the court to grant a continuance on account of the absence of a witness. The trial was begun on December 15, 1896, and the motion was filed that day. The affidavits show that a subpoena was served on the witness in Grant county on December 14, 1896, and mileage and fees were paid; that witness was a woman then eighty years old, and subject to occasional attacks of illness that confined her to the house; that on December 14th she was well and promised to attend court. The transcript and the affidavits do not show when the cause was set for trial on December 15th. On December 9th, appellants procured from the clerk of the Wells Circuit Court a subpoena for this and other witnesses. The subpoena was delivered to the marshal of a village in Grant county as agent of appellants. He informed appellants by telegram on December 15th that the witness was unable to come. If appellants, knowing the great age and infirm condition of the witness, had inquired on the 9th, or while there remained time to take her deposition in advance of the trial, they might have found that they could not rely on her being able to travel to Wells county. The court may well have thought that sufficient diligence was not shown. Furthermore, the matter regarding which it is stated that the witness would have testified, namely, the bad reputation of plaintiff for chastity before the alleged seduction, was testified to on the trial by fourteen witnesses for appellants. In *Schlotter* v. *State*, 127 Ind. 493, it was said: "We are not advised as to the ground upon which the court announced that the trial would not be postponed on account of the absence of this witness, but we must presume in favor of its ruling. If it was upon the

ground that there was a witness present by whom the same facts could be proved, then the ruling was undoubtedly correct."

As a proper request had been made for a special verdict, the court charged the jury only in reference to burden of proof, credibility of witnesses, measure of damages, and form of verdict. Appellants object to the fourth and eighth instructions. The fourth is a general charge in relation to the credibility of witnesses and follows almost literally the ninth instruction in *Rogers* v. *Rogers*, 46 Ind. 1, which was expressly approved. The eighth is addressed solely to the proof regarding plaintiff's chastity prior to the alleged seduction, and reads as follows: "In weighing the evidence as to plaintiff's general reputation for chastity as bearing upon the question as to whether she was a virtuous woman at and before her alleged seduction, you are not bound by that evidence to find that the plaintiff was not virtuous at the time of such alleged seduction. You are in duty bound to carefully inquire as to the truth on this point. The law presumes, in the absence of all evidence on the point, that the plaintiff was virtuous before her alleged seduction; and it is your duty to consider all the evidence in the cause, together with that of reputation, to ascertain as to whether she was actually virtuous notwithstanding any evidence of a bad reputation for virtue and chastity." This instruction, taken in connection with the one on burden of proof, was correct.

Complaint is made of the exclusion of evidence to prove the bad reputations of several women with whom plaintiff had associated, and a declaration made by plaintiff that she had had sexual intercourse with others, before the time of the alleged seduction. In each instance the record is in this condition: Appellants propounded a question to the witness on the stand; plaintiff objected; the court sustained the objection; appellants severally excepted to the ruling; and then followed an offer to prove, the refusal of the offer, and an exception thereto by appellants. In *Deal* v. *State*, 140 Ind. 354,

371, it was held that this procedure does not raise any question as to the admissibility of the proposed testimony. Briefly, the reason is this: The exception to the ruling in sustaining the objection to the question presents no question, because no offer to prove by the answer, to the *pending* question was made; the exception affirmed that the court had then and there, by its ruling in sustaining the objection, committed an error; no subsequent action of appellants could make the ruling erroneous if it was not so at the time; now, when the question was no longer pending, the subsequent offer to prove amounted to nothing; an exception can be reserved only to the action of the court in refusing to allow a witness, duly sworn and present, to answer a question; and the sum of the two naughts is naught. It has,been repeatedly decided that the only proper practice is to propound the question to the witness on the stand, and, if objection to the question is made, to state to the court what the examiner proposes to prove by the witness's answer to the question, and then, if the objection is sustained, to reserve an exception to the ruling on the question. *Judy* v. *Citizen*, 101 Ind. 18; *Higham* v. *Vanosdol*, 101 Ind. 160; *Gipe* v. *Cummins*, 116 Ind. 511; *Spence* v. *Board, etc.*, 117 Ind. 573; *Kern* v. *Bridwell*, 119 Ind. 226; *LaPlant* v. *State*, 152 Ind. 80, 85; *Illinois, etc., R. Co.* v. *Cheek*, 152 Ind. 663, 679; *Sauntman* v. *Maxwell* (154 Ind.), 54 N. E. 397; *Chicago, etc., R. Co.* v. *DeBaum*, 2 Ind. App. 281; *Bank* v. *Stanley*, 4 Ind. App. 213.

Appellants severally objected to the admission of the major portion of plaintiff's evidence, on the theory that there was a misjoinder of causes of action, that the seduction was barred, etc. For reasons heretofore given, these objections were properly overruled.

The jury assessed plaintiff's damages at $5,000. The judge who heard the case approved this assessment. There is nothing in the record to show that the verdict was the offspring of prejudice or passion. In *Marshall* v. *Taylor*,

98 Cal. 55, in sustaining a verdict for $25,000 in favor of a young girl against a married man of mature years, the court said: "Courts are not disposed to make smooth the ways of the seducer. At common law in these cases, verdicts of juries were seldom held to be excessive, and this, too, where the parent recovered damages upon the fiction of loss of service. With much greater reason should we not disturb the amount of a verdict where the party directly injured is the party plaintiff. The law is most liberal in these matters, and rightly so. Through the seducer's arts a young girl has been outlawed from society; she has been cast upon the world robbed of her innocence; an injury has been done which nothing can repair; a loss has been suffered which nothing can alleviate." See, also, *Barbour* v. *Stephenson*, 32 Fed. 66; *Baird* v. *Boehner*, 77 Iowa 622, 42 N. W. 454; *Mighell* v. *Stone*, 74 Ill. App. 129.

Judgment affirmed, now as of the date of submission.