## JAMES DUNLAP v. JOHN A. LINTON.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 22, 1891—Decided October 5, 1891.

Because, in trespass by a father for the seduction of his daughter, the cause of action is the seduction, and not the resulting lying-in expenses, the support of the daughter, and the mental pain she may have sustained, the action is barred when six years have elapsed after the seduction was accomplished.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 41 July Term 1891, Sup. Ct. ; court below, No. 21 February Term 1890, C. P.

On January 25, 1890, James Dunlap issued capias in trespass against John A. Linton, for the seduction of the plaintiff's daughter. Issue.

At the trial on February 19, 1891, it was shown by testimony on behalf of the plaintiff that, on or about August 16, 1883, his daughter, Annie Dunlap, then about sixteen years of age, was seduced by the defendant and a child then begotten ; that in January, 1884, the defendant went to Quincy, Ill. ; that a female child was born on May 16, 1884, and that defendant remained in Illinois until January, 1890, when he returned to Lancaster county, and this suit was brought.

At the close of the case on the evidence, the court, LIVINGSTON, P. J., charged the jury in part as follows :

This is an action of trespass, or rather, trespass on the case, for the seduction of a daughter of the plaintiff by the defendant. It is founded exclusively on the relation of master and servant, not on that of parent and child. And the gist of the offence is the consequential loss of service.

Section 2, act of April 19, 1843, P. L. 348, declares : " That the action of seduction may be maintained and sued by any mother, where the father is deceased, of the female seduced, to

recover damages for loss of service, or for such aggravations as may have attended the commission of the injury."

It has been held, that in an action by a parent for the seduction of a daughter, evidence of a prior promise of marriage is inadmissible; inasmuch as such promise, and a breach of it, are the subjects of an action by the daughter herself. In this action, the father, suing for damages, may prove the value of her services. And an acquittal of the defendant, on an indictment for seduction under the act of assembly, is no bar to recovery of exemplary damages in a civil action, brought by the father for the loss of service. And the law seems to be the same, if there was an indictment for fornication and an acquittal.

Where the female seduced is the plaintiff in an action for seduction, and the statute of limitations is the plea, the statute of limitations begins to run from the date of the seduction, because the cause of action accrues to her, and is completed at the date of the commission of the act of seduction. The statute, in such cases, commences to run from the time the legal injury accrues. By legal injury we mean such injury as entitles the party to maintain an action, even though the damage is merely nominal. Therefore, where the injury is such that a right of action accrues, the statute begins to run from that time, however slight the damages.

The idea, that implied, equitable exceptions, which the legislature has not made, are to be engrafted by the courts on a statute of limitations is now generally abandoned. Neither the daughter nor her father can maintain an action for the act of seduction alone, after the expiration of six years from its commission. . . . .

But our laws give to the parent of a minor daughter, such as this plaintiff's daughter, Annie B. Dunlap, is shown to have been, a minor residing at home with her father, in his service, his servant, an action against her seducer, not only for the commission of the act of seduction, but to recover damages for the loss of her service, or for such aggravations as may have attended or been the consequences of the commission of the seduction. [It cannot, therefore, in our judgment, be legally held, that the statute begins to run against a parent, where his daughter has been seduced, from the moment of her illicit con

nection with her seducer, for the reason that the law gives him a right to recover among other things for the loss of her service, and her nursing and care during pregnancy and confinement, etc., which do not take place until some time after the seduction, but are caused by and in consequence of the seduction.] [10]

The fact of defendant's absence was no prevention of the father's bringing suit against him. Neither he nor his daughter were bound to await his return, to bring suit against him. In the case now trying, the plaintiff in his statement claims for loss of the service of his daughter, for nursing, care and attention of his daughter, and of her child born May 16, 1884; for doctor's bill, lying in expenses, maintenance of the child, etc.; all of which occurred after, some of them a considerable time after the seduction, but were the consequences of the seduction; and most of his claim for these things arose within six years prior to the commencement of this action against the defendant, the child being born May 16, 1884, and the action commenced January 25, 1890.

The learned gentlemen trying this case are correct in saying they find no direct decision on this point by the Supreme Court of Pennsylvania. The question is a new one in this commonwealth. [The only case which appears to fully cover the point is found reported in Kentucky, in which state their laws include a statute of limitations somewhat like our own, except that the time for the commencement of such action is limited to one year, instead of six years as in our act. The Supreme Court of Kentucky say that, in an action by a parent for the loss of service and expenses, in consequence of the seduction of his daughter, the limitation of one year begins to run from her recovery after the birth of the child. And this seems to be reasonable; for all consequences, damages and injuries, for which the parent will be enabled to recover, will be fully developed, brought to view, and capable of proof by that time, and therefore form his complete cause of action. The statute is therefore no bar to a recovery in this case.] [11]

The defendant requests the court to charge you:

1. That the facts in this case prove that more than six years had elapsed after the cause of action had accrued before the suit was brought, and the verdict of the jury should be for the defendant.

VOL. CXLIV—22

Answer: Refused.[6]

—The jury returned a verdict for the plaintiff for $550. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning inter alia for error:

6. The answer to the defendant's point.[6]

10, 11. The portions of the charge embraced in [ ] [10] [11]

*Mr. H. R. Fulton* amd *Mr. J. W. F. Swift*, for the appellant.

Counsel cited: Wilhoite v. Hancock, 5 Bush (Ky.) 567 (see Hancock v. Wilhoite, 1 Duv. 313) ; White v. Nellis, 31 N. Y. 405 (88 Am. Dec. 282) ; Commonwealth v. Ruffner, 28 Pa. 259 ; Macfadzen v. Olivant, 6 East 448 ; National Copper Co. v. Mining Co., 57 Mich. 83 (58 Am. Rep. 333) ; Battley v. Faulkner, 3 B. & Ald. 288 ; 2 Addison on Torts, 4th ed., 1164; Badgely v. Decker, 44 Barb. 577 ; Mohry v. Hoffman, 86 Pa. 358 ; Owen v. Saving Fund, 97 Pa. 47 ; Gonder v. Estabrook, 33 Pa. 374 ; 1 T. & H. Pr., 184 ; Amy v. Watertown, 130 U. S. 320.

*Mr. B. F. David*, for the appellee.

Counsel cited: Overton v. Tracey, 14 S. & R. 328 ; 2 Addison on Torts, §§ 1274, 1361 ; Ream v. Rank, 3 S. & R. 215, 219 ; Hornketh v. Barr, 8 S. & R. 36 ; Roberts v. Read, 16 East 215 ; Banks v. Waterman, 25 Conn. 324 ; Jones v. Conoway, 4 Y. 109 ; Hutchinson v. M. & M. Bank, 41 Pa. 42.

OPINION, Mr. JUSTICE MITCHELL :

The courts have been always liberal in sustaining actions of this kind, and we have accordingly looked carefully through the present case, with every disposition to save the verdict, but settled principles seem clearly against it.

Though no authority has been found on the exact point as to the statute of limitations, yet all the cases treat the seduction as the cause of action, even though it be not actionable unless loss of service follow. Thus, in Chitty's note to 3 Bl. Com., 143, it is laid down as settled, that " in that action which is in most general use, viz., a per quod servitium amisit, the father must prove that his daughter, when seduced, actually assisted in some degree in the housewifery of his family ; " and, though the later authorities are that, if the daughter be under age, or

over age and residing with the father, service will be presumed if it is within the power of the father to command, yet no change has been made as to the time to which the test shall be applied, to wit, the time of the seduction; and all of our own cases in which the subject is touched at all, go upon the same view. Thus, in Wilson v. Sproul, 3 P. & W. 49, it is said by Ross, J.: "The relation of master and servant must exist between the plaintiff and the person seduced, at the time when the injury is committed." In South v. Denniston, 2 W. 474, it was held that a widowed mother, with whom the daughter did not live at the time of the seduction, could not maintain the action, although the lying-in took place in the mother's house, and the expenses were paid by her. Gibson, C. J., said the action was founded exclusively on the relation of master and servant, and, the gist of it being the consequential loss of service, "if this right be.divested or expired, the relation can be renewed but by actual service, which, to found an action for the interruption of it, must have existed at the doing of the act of which the interruption is a consequence. . . . . But, a mother being at best in the category of a father who has parted with his right, can maintain the action but on proof of actual service at the time of the seduction." And this is quoted with approval by Sergeant, J., in Fernsler v. Moyer, 3 W. & S. 416: "The mother, not being bound to maintenance, can maintain the action only by proving actual service at the time of seduction."

But a case which seems to put the matter beyond further contention is Logan v. Murray, 6 S. & R. 175. There the daughter was seduced during her father's lifetime, but was not confined until after his death, while living with and rendering service to her mother who was at the expense of the confinement. It was held that an action by the mother could not be maintained. "Whatever damage the mother might sustain," said Duncan, J., "arose from an act committed in the father's lifetime. The daughter was his servant. When the mother became, on her husband's death, the mistress of the house, the mischief was done; the daughter came into her service pregnant. If the alleged trespass gave her no cause of action, the consequence of the trespass could not. . . . . I agree that this action is considered with great liberality, and that courts of

justice have extended it very far in comprehending not only parents, but other relatives in loco parentis; but they have always adhered to the nature of the action; have never extended it to cases where at the time of the injury done the person complaining was not, in contemplation of law, either enjoying the services of others, or having a right to retain them. . . . . The lying-in expenses, the support of the daughter, the mental pain she may have sustained, do not of themselves give the cause of action, although in truth the latter forms the principal feature in giving damages."

This case is decisive that the cause of action is the seduction, and that no new action arises from the subsequent results to the plaintiff. It establishes, therefore, that the cause of action in the present case was complete more than six years prior to the writ, and that the statute of limitations was a bar. The defendant's first point should have been affirmed.

Judgment reversed.