Rosa Ortiz Ríos, Plaintiff and Appellee, v. Leonardo Viera, etc., Defendant and Appellant.

No. 8260. Argued June 5, 1941.—Decided July 29, 1941.

F. García Veve for appellant. José Soto Rivera for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

This is an action for damages for breach of a marriage promise and for seduction, wherein the plaintiff, Rosa Ortiz Ríos, alleged in her complaint filed in the District Court of San Juan on November 29, 1938, that on November 4, 1937, and prior thereto, she was an unmarried woman, over 21 years of age, a virgin, resident of Santurce, of excellent reputation, reputed to be pure, and of unquestionable chaste character; that the defendant, Leonardo Viera, also known as Manuel Viera, was reputed as a man of good moral character, industrious, honest, very reliable in his engagements, and enjoying a comfortable financial situation; that the defendant had a love affair (*relaciones amorosas*) with the plaintiff lasting for over a year, and promised to marry her as soon as he obtained a divorce from his wife from whom he had separated; that the defendant visited the plaintiff at her home, took her out frequently, and introduced her to his friends and relations as his sweetheart and future wife; that the plaintiff, relying on the marriage promise of the defendant, and on his good reputation as an upright, serious, and reliable man, went out alone with him, and on November 4, 1937, the defendant asked her to surrender her virtue to him, again offered to marry her as soon as he obtained a divorce and to buy and furnish a house for her and to look after her needs and help her mother who was a widow; that due to those deceitful promises and to the fact that at the same time, with his caresses, the defendant gradually overcame the resistance of the plaintiff and created in her an improper desire similar to the one he sought to satisfy, the plaintiff surrendered her virginity to him; that the plaintiff and the defendant lived together as man and wife for two months in a house, the rent on which was paid by the defendant, and by reason of certain disagreements, the plaintiff returned to her home, where she resided for five or six months, the defendant again calling on her and offering once more to fulfil

all his previous promises to her, and he succeeded in getting her to go back to live with him as man and wife; that as a result of those relations the plaintiff has become pregnant, the defendant having deserted her two months previously, ever since which time he has refused to pay the rent and the allowance for food which he had granted to her; that the defendant has wholly failed to fulfil the promises he made to the plaintiff, including the marriage promise, despite the fact that he is now legally able to marry her, he having divorced his wife. The plaintiff further alleged loss of reputation, inability to contract marriage with another man, loss of health, and resulting damages to the amount of $5,000.

The defendant in his answer denied all the allegations of the complaint, and as new matter set up the following:

"1. That, according to defendant's information and belief, which he in good faith believes to be true, the plaintiff on the dates alleged in the complaint received the visits of men at her home, in the daytime as well as during late hours in the evening, and that she went out accompanied by them, in the daytime as well as at night, always returning to her home at late hours in the evening.

"2. That, furthermore, the plaintiff on the date or dates alleged in the complaint had a sweetheart, named Jorge, an employee of the Colmado Vela of Santurce, with whom she went everywhere, in the daytime as well as at night, and who visited her at her home, leaving the same at late hours in the evening."

And as special defenses he alleged:

"1. The complaint in the above-entitled case does not state facts sufficient to constitute a cause of action.

"2. That the action for damages brought by the plaintiff in this case is barred, in accordance with the provisions of Sections 1868 (2) and 1802 of the Civil Code in force in Puerto Rico, 1930 edition."

Due to the death of the judge who had presided at the trial, the case was submitted to another judge of the lower court, to be decided, as it was decided, upon the evidence introduced by the parties as the same appeared from the transcript thereof. The lower court rendered judgment sustain-

ing the complaint and adjudging the defendant to pay to the plaintiff $2,000 as damages, together with costs and $300 as attorney's fees, from which judgment the defendant appealed, and he has assigned five errors, to wit: First, in deciding that the correction of a clerical error was involved in changing, in the complaint, the date November 4, 1936, to November 4, 1937, as that on which the seduction had been committed, especially as this amendment had been requested during the trial; second, in holding that the cause of action exercised was not barred under the provisions of Sections 1802 and 1868 (2) of the Civil Code (1930 ed.); third, in weighing the evidence, acting under the influence of passion, prejudice, and partiality; fourth, in denying the motion for reconsideration three months after the same had been filed by the appellant; and, fifth, in imposing costs on the appellant.

■ The first assignment is without merit. The power of district courts to permit amendments of pleadings is a broad one, and unless showing is made that the court, in exercising its discretion, has prejudiced the rights of the adverse party, its action is not ground for reversal. In the case at bar, the plaintiff before the trial notified the defendant that there was a clerical error in the complaint, and that where it said 1936 it should be understood to be 1937. At the trial, before any evidence was introduced, the plaintiff asked the court to consider such date as corrected, and although the defendant objected, he failed to make a request for a continuance or for time within which to plead to the amended complaint. Besides, the defendant in his answer denied all the averments of the complaint, that is, he denied that in 1936 or at any other time he had maintained any relations whatsoever with the plaintiff.

■ The second assignment raises a legal question which is new in this jurisdiction, namely, whether conceding, as we must, in accordance with the decisions in *Román* v. *Vázquez*, 29 P.R.R. 736, and *Torres* v. *Heirs of Córdova*, 31 P.R.R.

849, that the source of this kind of actions is Section 1802 of the Civil Code, and that such actions, as provided for in subdivision 2 of section 1868 of the same code, prescribe in one year, such limitation period must be computed from the time the first sexual intercourse between the parties took place or from the time the relations between them terminated.

In the case at bar it was proved that the first sexual intercourse occurred on November 4, 1937, and the complaint was filed on November 29, 1938, or twenty-five days after the expiration of one year from the former date. The lower court, in holding that the action was not barred, in its opinion said:

"But although we hold that the limitation period is one year, we think, however, that the action in this case had not prescribed at the time the complaint was filed. Although the first act of sexual intercourse occurred on November 4, 1937, nevertheless, the fact is that the plaintiff continued to live with the defendant for a period of two months, repeating the acts of sexual intercourse during all that time and being under the influence of the defendant and of his flattery, artifices, machinations and his deceitful promises; and we hold that when such is the case the limitation period does not begin to run until the time of the last act of intercourse. It can not be otherwise. To hold the contrary would be to practically place in the hands of the wrongdoer the tremendous power of nullifying an action for damages for seduction. All that the seducer would have to do would be to continue his flattery, his false promises, his tricks, and machinations—an easy thing to do, having the victim under his control—to maintain the same throughout the limitation period, and then, after the expiration thereof, to come out triumphant, cynically proud of his work, knowing that the unfortunate woman has not available any remedy against him.

"It is true that there is some *dicta* contrary to our proposition, but we can state that in our intensive research, in all the cases which we have encountered, the courts, in facing the problem, have uniformly held that when there are involved continuous acts of intercourse carried out under the same false promises and flattery, the limitation period does not begin to run until the last act of intercourse. The case of *Franklin* v. *McCorkle*, (Tenn.) (1886), 57 Am. Rep. 244, which is cited by the defendant and which supports his

contention was subsequently overruled by the Supreme Court of Tennessee in the cases of *Davis* v. *Young*, 16 S. W. 473, *Ferguson* v. *Moore*, (1897) 39 S. W. 341, and *Heggie* v. *Hayes*, (1919) 208 S. W. 605, in which it was definitely held that the statute of limitations did not begin to run until the last act of intercourse. It is true that in a note to the last-cited case in 3 A.L.R. 150, the author of the note states the general rule that the statute of limitations commences to run from the first act of intercourse; but the fact is that the three cases which he cites, *Davis* v. *Boyett*, (La.) 66 L.R.A. 258, *Wilboit* v. *Hancock*, 5 Bust (Ky.) 567, and *Dunlap* v. *Linton*, (Pa.) 22 A. 819, do not support his statement. We have read *Davis* v. *Boyett* and *Dunlap* v. *Linton*, and both involve a complaint where only an act of sexual intercourse was alleged—not continuous and repeated acts—and from the time when said act occurred until the complaint was filed there had fully elapsed the limitation period. It is clear that in both cases the court did not have before it the problem which we are now facing. We have not read the other case cited of *Wilboit* v. *Hancock*, because the same commentator suggests that what was said therein was *obiter dictum*.

"In the other case commentated on, *Rockwell* v. *Day*, (Wash.) (1918), 172 Pac. 754, the court at the beginning of its opinion expressly stated that it refrained from laying down a rule that would be a guide for all cases; and the plaintiff alleged that the first act of intercourse occurred on April 9, 1909, and that the improper relations continued until December 20, 1913; and the complaint was filed on December 5, 1916. The limitation period was three years. The court in that case upheld what seems to us to be a wholesome rule. It established as a premise that the plaintiff had a right of action on April 9, 1909, and it considered that such right would continue until the relations were broken off and for three years thereafter; but that the application of this rule demanded that the intercourse be continuous and under the influence of the original promise; but that the plaintiff left the defendant in May, June, or July, 1912, and went to Portland; and that in September 1912, when she resumed her cohabitation with him, she did so voluntarily and without demanding any new promise; and it then held that the statute of limitations began to run from that date."

In the case of *Gunder* v. *Tibbitts*, (Ind.) 55 N. E. 762, also cited by the lower court, the following was said:

". . . Appellants cite *Franklin* v. *McCorkle*, 16 Lea, 609; *Dunlap* v. *Linton*, 144 Pa. St. 335, 22 Atl. 819; *Safford* v. *People*, 1 Parker, Cr. R. 474; *Cook* v. *People*, 2 Thomp & C. 404; *People* v. *Nelson*, 153 N. Y. 90, 46 N. E. 1040; *People* v. *Clark*, 33 Mich. 112. The last four cases support the proposition that in criminal prosecution the statute begins to run from the time of the first act of sexual intercourse. The first two cases affirm the same doctrine in civil actions by the father of the victim. *Franklin* v. *McCorkle*, supra, was repudiated in *Davis* v. *Young*, 90 Tenn. 303, 16 S. W. 473, wherein it was said: 'The seduction is made up of the several violations by the defendant, and he will not be permitted to confine her remedy to the first illicit act, as the only one of seduction, and when sued, relieve himself by showing the first act to have occurred more than twelve months before suit brought. Such limitation places it in the power of the unprincipled to effect the ruin of the confiding female, and then, by flattering the confidence and hopes of his victim, persevere in her debauchery at his will, and at last ignore all his cruel deceptions of the meantime, and insult the disgrace he has brought about, by pleading the twelve-months statute as applicable to the first act in his series of villainy. It should never be that one, by confessing his infamy, may, by multiplying the evidences of that infamy, acquit himself from accountability for its consequences. To hold that, under promise of marriage deceitfully made for the purpose of seduction, the first illicit act completes the offense, and the statute then begins to run, is to offer a reward to the unscrupulous to do many wrongs that he may escape the bitter consequences of his deceit, and to have him know that, the longer he practices his frauds and imposes upon a trusting woman, the more sure he is of going unwhipped of justice. *Franklin* v. *McCorkle*, 16 Lea, 609, is overruled.' And in *Ferguson* v. *Moore*, 98 Tenn. 342, 39 S. W. 341, the same rule was applied in an action by a girl for her own seduction. In *People* v. *Millspaugh*, 11 Mich. 277, and *Norton* v. *State*, 72 Miss. 128, 16 South. 264, and 18 South. 916, it was held that in criminal cases the statute did not begin to run until the last act of sexual intercourse, under and solely in consequence of a renewed promise of marriage, was had. The quotations hereinbefore given from *Haymond* v. *Saucer*, 84 Ind. 3, and *McCoy* v. *Trucks*, 121 Ind. 292, 23 N. E. 93, seem in harmony with the doctrine that the successive acts constitute but one wrong, consummated in the last act. And why should not this be so? If an act is done

under any sort of constraint, plain justice forbids the defendant to count the time of his control as a part of the period of limitations. In holding that this civil action is not barred, it may be needless to say that what the rule would be in prosecutions under the Penal Code is not hereby decided."

We have quoted in full the reasoning of the lower court as well as that of the opinion in the case of *Gunder* v. *Tibbitts, supra,* because there is set forth therein the jurisprudence of the American courts regarding the legal question involved. As we stated before, the question is a new one in this jurisdiction, but the appellant maintains that it is a case of *lex scripta* and that, therefore, regardless of how the question may have been decided in other jurisdictions, we must determine it here by applying subdivision 2 of Section 1868 of the Civil Code (1930 ed.), which provides:

"Section 1868.—The following prescribed in one year:

"1. *       *       *       *       *       *       *

"2. Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 1802, *from the time the aggrieved person had knowledge thereof.*" (Italics ours).

In interpreting that section account should be taken of the provisions of section 1869, to wit:

"Section 1869.—The time for the prescription of all kinds of actions, when there is no special provision to the contrary, *shall be counted from the day on which they could have been instituted.*" (Italics ours.)

This court has consistently held that in actions for damages the limitation period of one year begins to run from the time the aggrieved person has knowledge of the injury. *Busó* v. *Martínez,* 18 P.R.R. 994, *Blanco* v. *Hernández et al.,* 19 P.R.R. 769; *Silva* v. *Luce & Co.,* 44 P.R.R. 307, and *González* v. *Pérez,* 57 P.R.R. 843. But the question to be decided in the case at bar is: When can it be considered that the aggrieved plaintiff had knowledge of the injury caused to

her by the defendant? We should not overlook the peculiar nature of the cause of action exercised herein. It is one for damages for seduction, and for breach of marriage promise. This Supreme Court has heretofore held that in this kind of action the promise of marriage may be only "a concomitant circumstance making definite the seduction," *Román* v. *Vázquez*, 29 P.R.R. 736, 740; and in the more recent case of *Aponte* v. *Alonso*, 46 P.R.R. 532, the applicable doctrine was more fully set forth, thus:

"The courts have decided that the promise of marriage is one of the means to which the seducer frequently resorts to accomplish his purpose, but that this promise is not by any means a necessary and indispensable element for the seduction to be accomplished. That is to say, the sexual act may be performed and seduction accomplished without the existence of a promise of marriage. In the case of *Bradshaw* v. *Jones*, 103 Tenn. 331, 76 Am. St. Rep. 655, the court said:

" ' . . . That any act, solicitation, or statement which overcomes the unwillingness of the woman and causes her to yield her virtue is sufficient.'

"In accordance with the rule cited, the injured person is not necessarily limited to a showing of a promise of marriage. Her sphere of action is broader, since even in the absence of such a promise, she may show that she was induced to have intercourse by deception, enticement, or artifices of the seducer. *However, the promise of marriage, when it exists, and when the intercourse has been accomplished under its exclusive influence, is sufficient to constitute a cause of action. Sexual intercourse in itself will not suffice, but it is sufficient when it is the consequence of the promise of marriage.*" (Italics ours.)

In the case at bar the evidence showed, according to the findings which the court set forth in its opinion and which from an examination we have made of the transcript of the evidence we regard as correct, that the plaintiff surrendered herself to the defendant because the latter made love to her and held her out as his sweetheart for one year and promised to marry her as soon as he divorced his wife from whom

he had separated, and that he would buy a house for her and help her widowed mother. She yielded to the defendant on November 4, 1937, and lived with him for two months, and separated from him in January 1938, when she saw that he did not keep his promises. She then went to live with an aunt in Cayey. Three months afterward the plaintiff returned to Santurce to the house of her mother and the defendant then renewed his offers and promises and she, relying on them, resumed her cohabitation with him about the month of May 1938, and a month afterward, that is, on June 10, 1938, the wife of the defendant obtained a decree of divorce in her favor from the District Court of San Juan on the ground of desertion, which tends to show that the defendant had indeed separated from his wife. By that time the plaintiff was already pregnant and when she insisted that he should fulfill his marriage promise, he finally deserted her, and she had to be confined in the municipal hospital where she gave birth to a female child.

This evidence shows the deceit practiced upon the plaintiff. The fact that she had a decorous love affair (*relaciones amorosas*) with the plaintiff for a year despite the fact that he was a married man shows that she relied on his flattering conduct towards her and on the marriage promise which he had made to her. When the plaintiff surrendered herself to the defendant on November 4, 1937, and also when she returned to live with him, she did so trusting that he would fulfill said promise. Should the law be applied or interpreted in the sense that it was on the precise date of the first sexual act that her cause of action arose? It could not be so held in a case in which the facts show that the plaintiff had surrendered herself to the defendant and continued her relations with him always relying on the fulfillment of his marriage promise. It was not until several months had elapsed since the first sexual act that the defendant deserted her although she was pregnant, and he never fulfilled his promise.

We hold that the seduction of the plaintiff by the defendant was a continuous act which began on November 4, 1937, and ended when the plaintiff was deserted by the defendant. It was at the moment of the desertion that the cause of action arose, for it was then that the plaintiff had knowledge of the injury sustained by her.

In the instant case, the marriage promise can not be considered as a concomitant circumstance making definite the seduction, as was said in the case of *Román* v. *Vázquez, supra*, but that the continuous sexual acts between the plaintiff and the defendant occurred solely under the influence and in consequence of said promise. The action was not barred.

██ In the third assignment it is urged that the lower court in weighing the evidence acted under the influence of passion, prejudice, and partiality. We have carefully read the testimony of the witnesses for both parties, as the same appears from the transcript of the evidence, and we are of opinion that the error assigned is nonexistent. We are in the same situation to weigh the evidence as was the trial judge, since the case had been submitted to him upon a transcript of the pleadings and the evidence, and he did not see or hear the witnesses testify. *López* v. *Rexach*, 58 P.R.R. 145. We can therefore state that the summary of the evidence which the lower court made in its opinion, although it does not include all the details of the testimony, is correct as to the conclusion reached by the court from the weighing thereof. Such summary is as follows:

" . . . From the testimony of the plaintiff, to which we must accord full credit, it appears that she, an unmarried girl, chaste, and poor, about 1936 met the defendant who was the owner of a grocery store named after him and situated on the Quintana Highway in Hato Rey. The plaintiff lived next door to the grocery store and the defendant began to make love to her, promising her that he was going to divorce his wife in order to marry her, and that he was going to purchase a house and furnish it for her; that he was seeking a divorce because his wife had given him no children and

that he wanted to have a child from her because if they had a child, he would look after her properly and would make her his wife. He offered to talk to her mother; the latter did not accept him because he was a married man; but he persisted; her mother did not want it and the plaintiff did not, either; but he continued pressing her and would go to fetch her from the place where she worked in a tobacco factory at Stop 8, the manager of which was Rafael Ramos. Although the plaintiff told him that she could not listen to him because he was a married man, he continued 'after her,' making promises to her that he would marry her; he went often to her house until her mother consented to their going out together and he took her out and introduced her as his sweetheart; she did not yield immediately to his entreaties, on the contrary, she tried to avoid them, and in this connection she placed her attention on a young man who was in love with her, Jorge Medina, as she thought that perhaps if she listened to Medina, the defendant would give up his ideas; but the latter continued; and when about a year had elapsed, during which time they carried on their love affair and went out together on automobile rides in a car belonging to the defendant, who many times took her from the place where she worked to her house and vice versa, she yielded her virtue to him on November 1937; she told her mother and then, as he was married, she did not know what to do, whereupon she told him that he had to establish a home for her because her mother was 'bothering her very much' and then he asked her to accompany him on a search for a room which she did and they moved to a room in the house of Juana Estrella, on Palacios Street, where they lived for a period of two months; that the defendant paid one month rent but in the following month, he did not give her any day allowance nor anything and the plaintiff did not know what to do as she was very much ashamed; she did not know where to go; she did not have any food, nor anything with which to pay the room rent and she was also separated from her family. At last she sent for her mother and moved to her house again. Her mother took her in because she had no other place where she could go, although she did this without much pleasure due to what had happened. From there she went to Cayey to live there with an aunt because her mother was always scolding her. She stayed there two months and then returned to her mother's house. Then the defendant, upon learning that she had returned, again renewed his promises that he would behave better and that he would furnish a house for her and would marry her; the plain-

tiff did not accept but he always insisted, pressing her when she came out of the theater and on her way home, until, in plaintiff's own words, 'as I had already eloped with him, well I·thought and said to myself that in my house they did not treat me the same as before and as he pressed me so much, and I said to myself that I had already yielded to him that perhaps the promises that he made to me were true, and then I decided to return to live with him.' This reconciliation took place some three months after the original separation and they went to live at No. 73 Martinó Street, in the house of Gregoria Feliciano; that room was engaged by both of them and he again paid the rent and her expenses, 'behaving perfectly'; later on he gave her only a dollar a week, afterwards half a dollar, until she did not know what to do and, lastly, on February 23, 1938, she left the house and went to the hospital as a maternity patient where she was admitted as a pauper, for the defendant did nothing to help the plaintiff.

"  *         *         *         *         *         *         *

"The testimony of the plaintiff was amply corroborated in all its parts—although this was not necessary (*Tous Soto* v. *Chevremont*, 31 P.R.R. 363)—by the testimony of her mother Ambrosia Ríos, Juana Estrella, owner of the house where the plaintiff and the defendant went to live, Modesto Flores, a neighbor of Juana Estrella, Gregoria Feliciano, in whose house they lived after their reconciliation, her uncle Jenaro Alicea Ramos, an insular policeman, who testified as to the chaste character of the plaintiff. The plaintiff also introduced two civil cases of divorce instituted against the defendant by his wife.

"To overcome the strong and convincing evidence of the plaintiff, the defendant introduced Jorge Medina, Félix Rivera Vega, an employee of the defendant, Juan Bautista Iglesias, Ramón Rodríguez, another employee of the grocery store, and the defendant Leonardo Viera. We will not discuss their testimony in detail. We can say that, as a whole, it came far from overcoming the presumption and evidence of chastity introduced by the plaintiff. The testimony of the defendant does not deserve any credit; he absolutely denied that he had any sexual intercourse with the plaintiff ·or that he had offered to marry her; he did not even admit that he had visited her or that he knew Modesto Flores and Gregoria Feliciano and stated that all his connection with the plaintiff was confined to selling her groceries when she went to the grocery store to make purchases. To accord any credit to the testimony of the defendant

would be tantamount to regard the plaintiff as a monster of un-bounded audacity in charging against a man who has simply sold some provisions to her and who never importuned her, the acts narrated by her and corroborated by the other witnesses . . ."

What makes untenable the position of the defendant is the attitude assumed by him in absolutely denying having had any relations with the plaintiff. The evidence showed, without leaving any doubt in the mind of an impartial judge, that the defendant took the plaintiff to live with him first in a room in the house of Juana Estrella and then in another room in the house of Gregoria Feliciano, which he himself engaged while accompanied by the plaintiff and for which he paid. The testimony of the defendant denying those facts renders incredible the remaining portion of his testimony and strengthens that of the plaintiff and of her witnesses as to the essential facts of the case. Regarding the testimony of the other witnesses for the defendant and specially that of Jorge Medina on which the defendant lays emphasis in his brief, we are of the opinion that the lower court did not act under the influence of passion, prejudice, or partiality in refusing to accord any credit to such testimony. Their statements were manifestly exaggerated and the forceful way in which the plaintiff testified controverting such evidence justifies the action of the lower court in dis-regarding the same.

The fourth assignment relates to the action of the lower court in denying appellant's motion for reconsideration three months after the filing thereof. The record of the case shows that the judgment was rendered on May 23, 1940, and that defendant's motion for reconsideration thereof was filed on May 29 of the same year and that it was on August 28, 1940, that the lower court finally rendered an adverse decision on the same.

Section 292 of the Code of Civil Procedure, as amended by Act No. 67 of May 8, 1937 (Sess. Laws, p. 190), provides

in its pertinent part that district courts shall decide a motion for reconsideration of a judgment five days after said motion has been filed. There is no doubt that the error charged has been committed, nevertheless we are of the opinion that, taking into account all the attendant circumstances, the same did not prejudice the rights of the appellant and hence does not carry with it a reversal of the judgment.

The last assignment refers to the imposition of costs, including $300 as attorney's fees, on the defendant-appellant. The obstinacy of the defendant in denying the facts on the case is manifest, and therefore we must not interfere with the discretion of the lower court in granting the award of attorney's fees.

The judgment appealed from is affirmed.