358

Rosa Ortiz Ríos, demandante y apelada, *v.* Leonardo Viera, conocido también por Manuel Viera, demandado y apelante.

Núm. 8260.—*Sometido:* Junio 5, 1941. *Resuelto:* Julio 29, 1941.

*F. García Veve,* abogado del apelante; *José Soto Rivera,* abogado de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Se trata de una acción de daños y perjuicios por incumplimiento de promesa matrimonial y por seducción en la que la demandante Rosa Ortiz Ríos alegó en su demanda radicada en la Corte de Distrito de San Juan el 29 de noviembre de

1938 que en noviembre 4 de 1937 y antes de dicha fecha era una mujer soltera, mayor de 21 años de edad, virgen, residente en Santurce y de excelente buen nombre, reputada por pura y de intachable carácter casto, siendo el demandado Leonardo Viera conocido por Manuel Viera, reputado como hombre de buena conducta moral, trabajador, honrado y muy cumplidor de sus compromisos y de desahogada posición económica; que el demandado llevó relaciones amorosas con la demandante durante más de un año habiéndole ofrecido contraer matrimonio con ella tan pronto obtuviera el divorcio de su esposa, de quien vivía separado; que el demandado visitaba a la demandante en su casa, la sacaba a pasear frecuentemente y la presentaba a sus amigos y relacionados como su novia y futura esposa; que la demandante confiada en las promesas del demandado de casarse con ella, en su buena reputación como hombre sano, formal y cumplidor de sus compromisos, salía sola con él a paseos, y el 4 de noviembre de 1937 el demandado la requirió para que le entregara su persona, le ofreció de nuevo casarse con ella tan pronto se divorciara y comprarle y amueblarle una casa y atender a todas sus necesidades y ayudar a su madre que era viuda; que debido a esas promesas engañosas y al mismo tiempo que con sus caricias fué el demandado venciendo la resistencia de la demandante y creando en ella el deseo impropio que él quería realizar y que realizó gozando entonces de su virginidad; que la demandante y el demandado vivieron juntos como marido y mujer durante dos meses en casa que pagaba el demandado y por discordias la demandante se marchó para su hogar donde residió cinco o seis meses habiendo vuelto el demandado a visitarla y haciéndole nuevas promesas de cumplirle todo lo que le había prometido antes y consiguió que ella volviera a vivir con él como marido y mujer; que como consecuencia de estas relaciones la demandante está embarazada y abandonada por el demandado desde hace dos meses negándose desde esa fecha a pagarle la habitación y a sumi-

nistrarle la pensión alimenticia que le tenía asignada; que el demandado ha dejado de cumplir todas las promesas que hizo a la demandante, incluso la de casarse con ella, no obstante estar en condiciones legales de poderlo efectuar por haberse divorciado de su esposa. La demandante alega además haber perdido su reputación, no poder contraer matrimonio con otro hombre, haber perdido su salud y como consecuencia ha sufrido daños y perjuicios que estima en la suma de $5,000.

El demandado en su contestación negó todos los hechos alegados en la demanda y como materia nueva alegó lo siguiente:

"1. Que la demandante en las fechas que se alegan en la demanda, según información y creencia del demandado, la que cree ciertas de buena fe, recibía visitas de hombres en su casa tanto de día como a altas horas de la noche y que salía en unión de éstos tanto de día como de noche regresando siempre a su casa a altas horas de la noche.

"2. Que la demandante además para la fecha o fechas que se alegan en la demanda tenía un novio nombrado Jorge, empleado del Colmado Vela de Santurce, con el que salía a todas partes tanto de día como de noche y quien la visitaba en su casa, saliendo de ella a altas horas de la noche."

Y como defensas especiales alegó que:

"1. La demanda de epígrafe no aduce hechos suficientes constitutivos de una causa de acción.

"2. Que la acción para el resarcimiento de daños y perjuicios entablada por la demandante en este caso está prescrita a tenor de lo dispuesto en los artículos 1868, inciso 2, y 102 del Código Civil vigente de Puerto Rico, edición de 1930."

Por haber fallecido el juez ante quien se celebró el juicio el caso fué sometido a otro juez de la corte inferior. para ser resuelto, como lo fué, por la prueba presentaba por las partes según aparecía de la transcripción de la evidencia. La corte inferior dictó sentencia por la que declaró con lugar la demanda y condenó al demandado a pagar a la deman-

dante $2,000, más las costas y $300 como honorarios de abogado, en concepto de daños y perjuicios, y de ella apela el demandado imputando a dicha corte cinco errores, a saber: primero, al resolver que era un error clerical el cambiar en la demanda la fecha de 4 de noviembre de 1936 por la de 4 de noviembre de 1937 como la fecha en que se cometió la seducción, especialmente por haberse solicitado esta enmienda en el momento del juicio; segundo, al declarar que la causa de acción ejercitada no está prescrita a tenor de las disposiciones de los artículos 1802 y 1868, inciso 2, del Código Civil (ed. 1930); tercero, al apreciar la prueba, actuó movida por pasión, prejuicio y parcialidad; cuarto, al declarar sin lugar, tres meses después de presentada, la moción de reconsideración de sentencia radicada por el apelante; y quinto al imponer las costas al apelante.

■ El primer señalamiento carece de méritos. La facultad de las cortes de distrito para permitir enmiendas a las alegaciones es amplia y a menos que se demuestre que al ejercitar su discreción lo han hecho perjudicando los derechos de la parte contraria no será motivo de revocación. En el caso de autos la demandante notificó antes del juicio al demandado que había un error clerical en la demanda y que donde decía 1936 debía entenderse que era 1937. Antes de empezar el desfile de la prueba el día del juicio la demandante solicitó de la corte se tuviera por enmendada dicha fecha y aunque el demandado se opuso no solicitó la suspensión del juicio ni tiempo para alegar contra la demanda así enmendada. Además, el demandado en su contestación negó todos los hechos de la demanda, es decir, negó que tanto en 1936 como en cualquiera otra fecha tuviera relaciones de clase alguna con la demandante.

■ El segundo señalamiento levanta una cuestión legal nueva en esta jurisdicción, es decir, si, aceptando como debemos de acuerdo con nuestra propia jurisprudencia sentada en los casos de *Román* v. *Vázquez,* 29 D.P.R. 791 y *Torres*

v. *Sucn. Córdova*, 31 D.P.R. 897 que esta clase de acciones surgen del artículo 1802 del Código Civil y que de acuerdo con el inciso 2 del artículo 1868 del mismo Código prescriben al año, ese término prescriptivo debe empezarse a contar desde que ocurrió el primer acto carnal entre las partes o desde que terminaron las relaciones entre ellos.

En el caso de autos se probó que el primer acto carnal ocurrió el 4 de noviembre de 1937 y la demanda se radicó el 29 de noviembre de 1938 o sea veinticinco días después de expirado el año. La corte inferior al resolver que la acción no había prescrito se expresó así en su opinión:

"Pero aunque sostenemos que el término de prescripción es el de un año, sin embargo, creemos que la acción en este caso no había prescrito al presentarse la demanda. Aunque el primer acto carnal ocurrió en noviembre 4, 1937, sin embargo, es lo cierto que la demandante continuó viviendo con el demandado por espacio de dos meses repitiendo los actos carnales durante todo ese tiempo y estando bajo la influencia del demandado y de sus halagos, artificios, maquinaciones y de sus falsas promesas; y sostenemos, que cuando tal es el caso, el término de prescripción no comienza a correr sino desde la ocurrencia del último acto carnal. Y no puede menos de ser así. Sostener lo contrario sería prácticamente poner en manos del malhechor el tremendo poder de abolir la acción de daños y perjuicios por seducción. Todo lo que tendría que hacer el seductor es continuar sus halagos, sus falsas promesas, sus artimañas y maquinaciones, fácil de hacer pues tiene a la víctima bajo su control, mantenerles por el período de prescripción, y transcurrido éste, salir triunfante, cínicamente orgulloso de su obra, a sabiendas que la infeliz mujer no ha de tener ningún recurso contra él.

Es cierto que existe *dicta* en contrario de nuestra proposición, pero podemos afirmar, que en nuestra intensa búsqueda, en todos los casos con los cuales nos hemos tropezado, los tribunales, al confrontarse con el problema, han resuelto uniformemente que cuando de actos carnales continuos se trata realizados bajo las mismas falsas promesas y halagos la prescripción no comienza a correr sino desde la realización del último acto carnal. El caso de *Franklin* v. *McCorkle*, (Tenn.) (1886), 57 Am. Rep. 244, citado por el demandado, y que sostiene su contención fué revocado posteriormente por la Corte Suprema de Tennessee en los casos de *Davis* v. *Young*, 16 S. W. 473;

y *Ferguson* v. *Moore,* (1897) 39 S. W. 341 y *Heggie* v. *Hayes,* (1919) 208 S. W. 605, en los cuales se sostuvo terminantemente que la prescripción no comenzaba a correr sino desde la fecha del último contacto carnal. Es cierto que en la nota a este último caso en 3 A.L.R. 150, el comentarista sienta la regla general que la prescripción corre desde el primer acto carnal pero es lo cierto que los tres casos que cita, *Davis* v. *Boyett,* (La.) 66 L.R.A. 258, *Wilboit* v. *Hancock,* 5 Bush (Ky.) 567 y *Dunlap* v. *Linton,* (Pa.) 22 A. 819 no sostienen su proposición. Hemos leído a *Davis* v. *Boyett* y *Dunlap* v. *Linton* y en ambos se trataba de una demanda donde se alegaba un solo acto carnal, no de actos continuos y repetidos, y desde la fecha en que aquél ocurriera hasta la demanda había transcurrido con exceso el término de prescripción. Es claro que en ambos casos la corte no tuvo ante sí el problema que ahora resolvemos. No hemos leído el otro caso allí citado de *Wilboit* v. *Hancock,* pero el mismo comentarista se encarga de expresar que lo dicho fué *obiter.*

"El otro caso comentado, *Rockwell* v. *Day,* (Wash.) (1918), 172 P. 754, la corte expresamente al principio de la opinión dijo que se abstenía de sentar ninguna regla que sirviera de guía para todos los litigios; allí alegó la demandante que el primer acto carnal ocurrió en abril 9, 1909 y las relaciones ilícitas continuaron hasta diciembre 20, 1913; la demanda fué presentada el 5 de diciembre de 1916. El término de prescripción era de tres años. La corte sostuvo en aquel caso lo que nos parece una regla saludable. Estableció la premisa que la demandante tenía una causa de acción desde la fecha del primer acto carnal, abril 9, 1909, y concedió que ella continuaba hasta el rompimiento de sus relaciones y por tres años con posterioridad a esa fecha; pero que esa regla requería que el contacto fuese continuo y bajo la influencia de la promesa original; pero que la demandante se separó del demandado en mayo, junio o julio de 1912 yéndose a Portland; y que en septiembre 1912, cuando reanudó su vida marital lo hizo voluntariamente, y sin exigir una nueva promesa, sosteniendo entonces que desde esa fecha comenzó a correr la prescripción."

En el caso de *Gunder* v. *Tibbitts,* (Ind.) 55 N. E. 762, también citado por la corte inferior, se resolvió lo siguiente:

"Los apelantes citan los casos de *Franklin* v. *McCorkle,* 16 Lea, 609; *Dunlap* v. *Linton,* 144 Pa. St. 335, 22 A. 819; *Safford* v. *People,* 1 Parker, Cr. R. 474; *Cook* v. *People,* 2 Thomp. & C. 404; *People* v. *Nelson,* 153 N. Y. 90, 46 N. E. 1040; *People* v. *Clark,* 33 Mich. 112.

Los últimos cuatro casos sostienen la regla de que en casos criminales el estatuto empieza a correr desde que tuvo lugar el primer acto sexual. El caso de *Franklin* v. *McCorkle,* supra, fué revocado en *Davis* v. *Young,* 90 Tenn. 303, 16 S. W. 473, donde se dijo: 'La seducción se compone de los varios actos carnales entre las partes, y no se le permitirá al demandado que limite el remedio de la mujer al primer acto ilícito, como el único constitutivo de la seducción, y que se releve de responsabilidad, una vez demandado, al probar que el primer acto carnal ocurrió más de doce meses antes de radicarse la demanda. Tal limitación confiere al hombre inmoral el poder para causar la ruina de una mujer cándida y entonces, ganándose la confianza e inspirando esperanzas en su víctima, seguir gozando de ella a su voluntad, y al fin olvidarse de todas sus decepciones crueles, e insultar la desgracia ocasionada por él, alegando que el estatuto de un año empieza a correr desde el primero de sus actos villanos. No debe permitirse que una persona que confiese su infamia pueda, multiplicando las evidencias de esa infamia, relevarse de toda responsabilidad por sus consecuencias. El sostener que, en un caso de una promesa de matrimonio hecha maliciosamente para los fines de seducir a una mujer, con el primer acto ilícito se consuma el delito, y el estatuto entonces empieza a correr, es ofrecer un premio a las personas sin escrúpulos y tentarlas a cometer muchos actos delictivos para así evadir las consecuencias de sus actuaciones, haciéndolas saber que cuanto más tiempo engañen a una cándida mujer, tanto más seguras estarán de evadir la justicia. *Franklin* v. *McCorkle,* 16, Lea, 609, queda revocado.' Y en *Ferguson* v. *Moore,* 98 Tenn. 342, 39 S. W. 341, la misma regla fué aplicada en una acción traída por una muchacha por su seducción. *En People* v. *Millspaugh,* 11 Mich. 277, y *Norton* v. *State,* 72 Miss. 128, 16 So. 264, y 18 So. 916, se resolvió que en casos criminales el estatuto no empieza a correr sino desde que tuvo lugar el último acto carnal, bajo promesa de matrimonio. Las citas anteriormente dadas de *Haymond* v. *Saucer,* 84 Ind. 3, y *McCoy* v. *Trucks,* 121 Ind. 292, 23 N. E. 93, parecen estar en armonía con la doctrina de que dichos actos sucesivos constituyen solamente una ofensa, consumada en el último acto. ¿Y por qué no debe ser esto así? Si se comete un acto bajo cualquier clase de compulsión, la justicia exige que el demandado no pueda contar el tiempo que sostuvo la demandante bajo su control, como parte del término de prescripción. Al resolver que esta acción civil no está prescrita, parece innecesario decir que no estamos decidiendo lo que sería la regla en procesos bajo el Código Penal.''

Hemos citado, en extenso, tanto los razonamientos expuestos por la corte inferior, como los del caso de *Gunder v. Tibbitts,* supra, porque en ellos se condensa toda la jurisprudencia de las cortes americanas sobre la cuestión legal envuelta. Como dijimos antes, la cuestión es nueva en esta jurisdicción, pero el apelante sostiene que es una de *lex scripta* y que, por tanto, no importa cómo la hayan resuelto en otras jurisdicciones aquí debemos hacerlo aplicando el inciso 2 del artículo 1868 del Código Civil (ed. 1930) que dispone:

"Artículo 1868.—Prescriben por el transcurso de un año:
"1. .      .      .      .      .      .      .      .

"2. La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1802 *desde que lo supo el agraviado."* (Itálicas nuestras.)

En la interpretación de este precepto debe tenerse presente lo que dispone el artículo 1869, a saber:

"Artículo 1869.—El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, *se contará desde el día en que pudieron ejercitarse."* (Itálicas nuestras.)

Consistentemente este tribunal ha resuelto que en las acciones por daños y perjuicios el término prescriptivo de un año comienza desde que supo del daño la persona agraviada. *Busó v. Martínez,* 18 D.P.R. 1035; *Blanco v. Hernández,* 19 D.P.R. 808; *Silva v. Luce & Co.,* 44 D.P.R. 318 y *González v. Pérez,* 57 D.P.R. 860. Pero, la cuestión a resolver en el caso de autos es ¿cuándo puede considerarse que la demandante agraviada supo del daño que le había ocasionado el demandado? No debemos olvidar la naturaleza especial de la causa de acción ejercitada. Es una de daños y perjuicios por seducción y por incumplimiento de promesa matrimonial. Ya este Tribunal Supremo ha resuelto que en esta clase de acciones la promesa de matrimonio puede ser solamente "una

circunstancia concomitante para hacer precisa la seducción'', · *Román* v. *Vázquez,* 29 D.P.R. 791, 795, pero, en el más reciente de *Aponte* v. *Alonso,* 46 D.P.R. 549 se expresó más ampliamente la doctrina aplicable así:

"Los tribunales han resuelto que la promesa de matrimonio es uno de los medios a que acude con frecuencia el seductor para realizar su propósito; pero que esta promesa no es en modo alguno un elemento necesario e imprescindible para que se cometa la seducción. Es decir, el acto carnal puede perpetrarse y cometerse la seducción sin que exista promesa de matrimonio. En el caso de *Bradshaw* v. *Jones,* 103 Tenn. 331, 76 Am. St. Rep. 655, la corte dijo:

" 'Cualquier acto, ruego o manifestación que venza la resistencia de la mujer y culmine en su rendición, es suficiente.'

"De acuerdo con la doctrina expuesta, la perjudicada no está necesariamente limitada a probar la promesa de matrimonio. Su esfera de acción es más amplia, ya que puede probar, aunque no exista la referida promesa, que fué inducida al acto carnal mediante artificios, engaños o maquinaciones del seductor. *Sin embargo, la promesa de matrimonio, cuando existe y se ha realizado el acto carnal bajo su exclusiva influencia, es suficiente para constituir una causa de acción. El comercio carnal por sí solo no es bastante, pero sí lo es, cuando es la consecuencia de la promesa de matrimonio.*"

En el caso de autos la prueba demostró, según las conclusiones que de ella hace la corte inferior en su opinión y que, por el examen que hemos hecho de la transcripción de evidencia, consideramos correctas, que la demandante se entregó al demandado porque éste la enamoró y llevó relaciones públicas como novio con ella durante un año y le ofreció casarse con ella tan pronto se divorciara de su esposa, de quien estaba separado, y que le compraría una casa y ayudaría a su madre viuda. Ella se entregó al demandado el 4 de noviembre de 1937 y vivió con él dos meses, separándose de éste en enero de 1938 al ver que no le cumplía. Ella se fué entonces a vivir a casa de una tía en Cayey. A los tres meses la demandante volvió a Santurce a casa de su madre y el demandado de nuevo insistió en sus ofrecimientos y promesas y ella, creyendo en ellas, volvió a vivir con él allá

para el mes de mayo de 1938, y al mes siguiente o sea el 10 de junio de 1938 la esposa del demandado obtuvo sentencia de divorcio a su favor en la Corte de Distrito de San Juan por la causal de abandono, lo que tiende a demostrar que efectivamente el demandado estaba separado de su esposa. Para esa fecha ya la demandante estaba encinta del demandado y al insistir en que él le cumpliera su promesa de matrimonio, él la abandonó definitivamente, teniendo ella que ingresar en el Hospital Municipal donde dió a luz una niña.

Esta prueba demuestra el engaño de que fué víctima la demandante. El hecho de que ella llevara relaciones amorosas honestas con el demandado durante un año a pesar de ser un hombre casado, demuestra que ella creyó en sus halagos y en la promesa de matrimonio que le había hecho. La demandante al entregarse al demandado el 4 de noviembre de 1937 y también al volver y continuar viviendo con él lo hizo confiando en que le cumpliría dicha promesa. ¿Debe sostenerse e interpretarse la ley en el sentido de que fué en la fecha precisa de haber realizado el primer acto carnal que surgió su causa de acción? No podría así resolverse en un caso en que los hechos demuestran que la demandante se entregó al demandado y siempre continuó sus relaciones con él confiando en que le cumpliría su promesa de matrimonio. No fué hasta transcurridos varios meses después del primer acto carnal que el demandado la abandonó, a pesar de estar ella encinta y no cumplió su promesa. Resolvemos que la seducción de la demandante por parte del demandado fué un acto continuo que comenzó el 4 de noviembre de 1937 y terminó cuando el demandado abandonó a la demandante. Fué en el momento del abandono que surgió la causa de acción pues fué entonces que la demandante supo del daño que había sufrido.

En el caso que resolvemos la promesa de matrimonio no puede considerarse como una circunstancia concomitante para hacer precisa la seducción, como se dijo en el caso de *Ro-*

*mán* v. *Vázquez,* supra, sino que, los actos carnales continuos entre demandante y demandado se realizaron bajo la exclusiva influencia y como consecuencia de dicha promesa. La acción no había prescrito.

■■ Por el tercer ·error se alega que la corte inferior al apreciar la prueba actuó movida por pasión, prejuicio y parcialidad. Hemos leído cuidadosamente las declaraciones de los testigos de una y otra parte según aparecen de la transcripción de la evidencia y somos de opinión que no existe el error imputado. Estamos en las mismas condiciones que el juez sentenciador en lo que a la apreciación de la prueba respecta, ya que el caso le fué sometido por la transcripción de las alegaciones y de la evidencia y él no vió ni oyó declarar a los testigos. *López* v. *Rexach,* 58 D.P.R. 143. Podemos decir, por lo tanto, que el resumen que de la prueba hace la corte inferior en su opinión, aunque no incluye todos los pormenores de lo declarado por todos los testigos, es correcto en cuanto a la conclusión a que llegó en su apreciación. Dice así:

"...De la declaración de la demandante, y a la cual le damos entero crédito, aparece que ella, una muchacha soltera, virgen, pobre, conoció al demandado que era dueño de un colmado que llevaba su nombre establecido en la carretera de Quintana en Hato Rey allá por el año 1936. La demandante vivía al lado del colmado y el demandado comenzó a enamorarla, ofreciéndole que se iba a divorciar de su esposa para casarse con ella, que le iba a comprar una casa y amueblarla; que estaba divorciándose porque su esposa no tenía hijos. y que él quería tener un hijo en ella, porque él, teniendo un hijo, la atendería debidamente y la haría su esposa. Le ofreció hablar con la madre; ésta no aceptó porque él era casado; pero él continuó insistiendo; la madre no quería ni la demandante tampoco; pero él continuó persiguiéndola y la iba a buscar al sitio donde ella trabajaba en una fábrica de tabaco en la parada 8 siendo su jefe Rafael Ramos. A pesar de que la demandante le decía que no podía atenderlo porque era casado él continuó 'andándole detrás' y haciéndole promesas de que se iba a casar con ella; él iba a menudo a la casa de ella hasta que por fin la madre consintió en que pasearan juntos y él la llevaba y la presentaba como su novia; ella no atendió seguido

sus requerimientos; por el contrario trataba de evitarlos y en ese sentido pensó en un muchacho que estaba enamorado de ella, Jorge Medina, creyendo ella que quizás atendiendo a Medina, el demandado desistiría de sus ideas; pero éste continuó; y cuando ya hacía como un año que llevaban relaciones y que paseaban juntos en el automóvil del demandado llevándola muchas veces del sitio donde trabajaba a su casa y vice versa se entregó en noviembre de 1937; ella se lo comunicó a la madre y entonces como él estaba casado ella no sabía qué hacer y entonces ella le dijo que tenía que ponerle casa porque su mamá la estaba 'abacorando mucho' y entonces él le pidió que fueran a buscar una habitación lo que hicieron y se mudaron a una que había en la casa de Juana Estrella en la calle Palacios donde vivieron por espacio de dos meses; que el demandado pagó un mes pero no el otro y no le llevó 'diarios' ni nada y la demandante no encontraba qué hacerse por la vergüenza que tenía; no sabía dónde irse; no tenía qué comer y con qué pagar la habitación estando también fuera del lado de la familia. Por fin mandó a buscar a la madre y se mudó con ella otra vez. La madre la admitió porque no tenía dónde ir; aunque no lo hizo con mucho gusto por lo que había ocurrido. De allí se fué a vivir a Cayey donde una tía porque la madre siempre la estaba regañando; allí estuvo dos meses y después regresó a casa de la madre. Entonces el demandado al saber que ella había regresado volvió nuevamente con sus promesas de que se iba a portar mejor, que le iba a poner una casa y casarse; la demandante no aceptaba pero él siempre insistía persiguiéndola a la salida del cine y al llegar a su casa, hasta que, dice la demandante, 'ya, como yo me había ido con él', pues pensaba y decía que en mi casa no me trataban igual que antes, y como él me perseguía tanto, y yo decía que ya que me había perdido por él que quizás sería verdad las promesas que me hacía él y entonces decidí volverme a ir con él nuevamente.' Esta reconciliación ocurrió como tres meses después de la primitiva separación y se fueron a vivir a la Calle Martinó núm. 73 en casa de Gregoria Feliciano; esta habitación fué hablada por los dos y entonces él volvió nuevamente a pagarla y atender los gastos de ella, 'portándose divinamente'; más tarde sólo le daba un peso semanal, después medio peso, hasta que ella no encontraba qué hacerse y por fin salió de la casa para dar a luz al hospital el 23 de febrero de 1939, donde ingresó como insolvente pues el demandado nada hizo para auxiliar a la demandante.

"

"La declaración de la demandante fué ampliamente corroborada en todos sus extremos, aunque ello no era necesario (*Tous Soto* v.

*Chevremont,* 31 D.P.R. 381), por los testimonios de la madre Ambrosia Ríos, Juana Estrella, dueña de la casa donde fueron a vivir demandante y demandado, Modesto Flores, vecino de Juana Estrella, Gregoria Feliciano, en cuya casa vivieron después de la reconciliación, su tío el policía insular Jenaro Alicea y Rafael Ramos que declararon sobre la buena reputación que en cuanto a su castidad gozaba la demandante. También presentó la demandante dos casos civiles de divorcio seguidos contra el demandado por su esposa.

"Contra la prueba fuerte y convincente de la demandante, la parte demandada presentó a Jorge Medina, Félix Rivera Vega, empleado del demandado, Juan Bautista Iglesias, Ramón Rodríguez, otro empleado del colmado, y el demandado Leonardo Viera. No vamos a discutirla detalladamente. En conjunto podemos decir que estuvo muy lejos de destruir la presunción y la prueba de castidad presentada por la demandante. La declaración del demandado no nos merece crédito; negó en absoluto que hubiera tenido contacto carnal con la demandante y que le hubiera ofrecido matrimonio; ni siquiera admitió que la hubiera visitado y que conociera a Modesto Flores y Gregoria Feliciano y que todas sus relaciones con la demandante fueron únicamente despacharle provisiones cuando iba al colmado a comprar. Creer la declaración del demandado sería conceptuar a la demandante como un monstruo de osadía sin límites al imputar a un hombre que simplemente le ha despachado provisiones y que jamás se ha dirigido a ella, los hechos relatados por ella y corroborados por los demás testigos...."

Lo que hace insostenible la posición del demandado es la actitud asumida por él al negar en absoluto toda clase de relaciones con la demandante. La prueba demostró, sin que pueda quedar duda en la mente de un juzgador imparcial, que el demandado se llevó a la demandante a vivir con él primero a una habitación en la casa de Juana Estrella y luego a otra en la casa de Gregoria Feliciano, las que él mismo fué a hablar con la demandante y las pagaba. La declaración del demandado negando esos hechos hace increíble el resto de su testimonio y fortalece la de la demandante y la de sus testigos en cuanto a los hechos primordiales del caso. En cuanto a la declaración de los otros testigos del demandado, y especialmente la de Jorge Medina, en que hace hincapié el demandado en su alegato, somos de opinión que la corte infe-

rior no actuó movida por pasión, prejuicio o parcialidad al no dar crédito a sus testimonios. Sus declaraciones fueron manifiestamente exageradas y la forma enérgica en que la demandante declaró rebatiendo esa prueba, justifica la conclusión de la corte inferior al no darle crédito.

El cuarto señalamiento se refiere al hecho de haber la corte inferior declarado sin lugar, tres meses después de presentada, la moción de reconsideración de sentencia radicada por el apelante. Los autos del caso demuestran que la sentencia se dictó el 23 de mayo de 1940 y que la moción del demandado solicitando su reconsideración se radicó el 29 de mayo del mismo año y que no fué hasta el día 28 de agosto de 1940 que la corte inferior dictó un "no ha lugar" sobre la misma.

El artículo 292 del Código de Enjuiciamiento Civil, tal y como quedó enmendado por la ley núm. 67 de mayo 8 de 1937 (Leyes de 1937, pág. 199) dispone en lo pertinente que las cortes de distrito deberán resolver las mociones de reconsideración de sentencia dentro de los cinco días después de haberse radicado. El error imputado no hay duda alguna de que fué cometido, pero, somos de opinión, sin embargo, de que tomando en consideración todos los hechos concurrentes no perjudicó los derechos del apelante y no conlleva, por tanto, la revocación de la sentencia.

El último señalamiento se refiere a la imposición de las costas y $300 como honorarios de abogado al demandado apelante. La temeridad del demandado al negar los hechos del caso es manifiesta y, por tanto, no debemos intervenir con la discreción de la corte inferior al imponer la condena de honorarios de abogado.

*Se confirma la sentencia apelada.*